## UNITED STATES

v.

**Patrick Glen JORDAN, and Rose Heather Silverstein.**

No. 3:91–00230.

United States District Court, M.D. Tennessee, Nashville Division.

Jan. 14, 1994.

Robert Anderson, Asst. U.S. Atty., for the U.S.

Peter J. Strianse, Nashville, TN, for Rose Heather Silverstein.

Michael Noel, Nashville, TN, for Patrick Glen Jordan.

## *MEMORANDUM*

WISEMAN, District Judge.

The question before the Court is the proper weight, for sentencing purposes, to be attributed to 22.2 milligrams of lysergic acid diethylamide (LSD) dissolved in 13.2 grams of an undetermined liquid. The government refers to this solution as "liquid LSD."

On November 11, 1991, federal agents executed a search warrant on a recreational vehicle owned by defendants Patrick Glen Jordan and Rose Heather Silverstein. The Agents seized a brown bottle containing liquid LSD, a square piece of glass, an ink roller with a spare design wheel, an ink pad, and a digital scale. According to the presentence report, these items constitute a laboratory for applying LSD to blotter paper for distribution. The total weight of the solution in the brown bottle was approximately 13.2 grams, of which 22.2 milligrams was LSD.

On February 9, 1993, defendants pled guilty to multiple counts of unlawful distribution of LSD, or possession with intent to distribute. Jordan pled guilty to Counts One and Two of the Superseding Indictment; Silverstein pled guilty to Counts One through Eight of the Superseding Indictment.

Defendants do not dispute that the government can establish that they are responsible for a total of 7.188 grams of LSD, excluding the bottle of liquid LSD. The government claims that the entire weight of the solvent and the pure LSD should be added to this 7.188 grams for sentencing purposes. Defendants argue that, because the LSD was in the process of being prepared for sale, only the actual weight of the pure LSD in the solution should be used.

## I.

The sentencing enhancement statute, 21 U.S.C. § 841(b)(1)(A)(v), provides that a conviction involving "10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD)" carries a ten year minimum sentence for a first offense, and a twenty year minimum sentence if the defendant has previously been convicted of a felony drug offense. If the Court were to find that defendants' conviction by guilty plea involved more than ten grams of LSD, Silverstein would be subject to the ten year minimum sentence, and Jordan would be subject to the twenty year minimum sentence by virtue of a previous felony drug conviction.

Because of the way LSD is commonly distributed, the question of what constitutes a "mixture or substance" for sentencing purposes is not as straightforward as it might seem. In its pure crystalline form, LSD is extremely potent. Before it may be used or sold to "retail customers" it must be combined with a "carrier medium." This is done initially by dissolving the pure LSD in a solvent such as alcohol. This form of the drug is somewhat unstable, however, because the solvent has a tendency to evaporate. The LSD solution, commonly referred to as "liquid LSD," is usually placed upon a stable carrier such as blotting paper, sugar cubes, or gelatin capsules before it is sold. The liquid LSD is applied to the carrier and the solution is allowed to evaporate, leaving a small amount of LSD on the carrier. *Chapman v. United States*, 500 U.S. 453, ——, 111 S.Ct. 1919, 1923, 114 L.Ed.2d 524 (1991); *United States v. Marshall*, 706 F.Supp. 650, 652 (C.D.Ill.1989).

In *Chapman*, the Supreme Court addressed the question whether the weight of an LSD carrier medium should be considered for sentencing purposes under 21 U.S.C. § 841. The Court did not consider liquid LSD, the intermediate form of the drug at issue in this case, but looked at the carriers commonly used by retail drug dealers, such as sugar cubes, blotter paper, and gelatin capsules. *See Chapman*, 500 U.S. at —— —— & n. 2, 111 S.Ct. at 1923–24 & n. 2.

The Court held that, in enacting § 841, Congress adopted a " 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the

length of the sentence." *Id.* at ——, 111 S.Ct. at 1925. The Court did not hold that the total weight of every conceivable "mixture" of a drug with a non-controlled substance may be used to calculate a sentence. *E.g. United States v. Acosta,* 963 F.2d 551 (2d Cir.1992) (holding cocaine dissolved in bottles of creme liqueur not a "mixture" under the statute); *United States v. Jennings,* 945 F.2d 129 (6th Cir.1991) (holding methamphetamine combined with chemical by-products not a "mixture" under the statute). The weight of a carrier medium is only used for sentencing purposes in those cases in which the drug is in a form in which it is "ready for wholesale or ready for distribution at the retail level." *Chapman,* 500 U.S. at ——, 111 S.Ct. at 1925. The Court reasoned that Congress' ultimate intent was to measure the quantity of drugs based upon the "street weight" of the drugs in the form in which they are sold. *Id.* at ——, 111 S.Ct. at 1927.

Because LSD is sold by the dose and not by weight, however, basing sentencing upon weight raises special problems of fairness and consistency. These problems are addressed to some extent in the most recent edition of the Sentencing Guidelines, which became effective on November 1, 1993. "Because the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself, the Commission has determined that basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD." Guidelines, § 2D1.1, Application Note 18, Background; *see also Chapman,* 500 U.S. at —— – —— & n. 2, 111 S.Ct. at 1923–24 & n. 2. Accordingly, the Guidelines adopt a standard weight per dose of 0.4 milligram. Guidelines, § 2D1.1 n.*. This weight is based upon the most common carrier medium, blotter paper. *See id.*

Under the Guidelines, a liquid in which pure LSD is dissolved is not a "carrier," the weight of which is to be considered in sentencing. Application Note 18 reads as follows:

> LSD on a blotter paper carrier medium typically is marked so that the number of doses ("hits") per sheet readily can by determined. When this is not the case, it is to be presumed that each ¼ inch by ¼ inch section of the blotter paper is equal to one dose.

> In the case of *liquid LSD (LSD that has not been placed onto a carrier medium), using the weight of the LSD alone to calculate the offense level* may not adequately reflect the seriousness of the offense. In such a case, an upward departure may be warranted.

Guidelines, § 2D1.1 (emphasis added).

■ There can be no doubt that "liquid LSD" refers to the type of LSD at issue in this case. Liquid LSD is a term of art used to describe pure LSD dissolved in a solvent, usually alcohol. *See, e.g., United States v. Martz,* 964 F.2d 787, 790 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 823, 121 L.Ed.2d 694 (1992); *United States v. Lawson,* No. 91–1388, 1992 WL 142666, at *1, 1992 U.S.App. LEXIS 14730, at *2 (10th Cir. June 23, 1992); *Anderson v. State,* 89 Md. App. 712, 599 A.2d 861, 864 (1991). The government and the probation office both refer to the 13.2 grams of liquid found in defendants' recreational vehicle as "liquid LSD." Application Note 18 indicates that pure LSD dissolved in a liquid "has not been placed onto a carrier medium" for distribution, and that a sentencing court should weigh "the LSD alone to calculate the offense level."

■ Thus, the appropriate weight of liquid LSD, for purposes of the Drug Quantity Table and the sentence enhancement, is 22.2 milligrams. The weight of the solvent is not included, nor is the solvent a carrier medium within the meaning of the Guidelines, and so no carrier weight is added to the weight of the pure LSD.

Even if the court considered the solvent a carrier medium, the actual weight of this solvent would not be used in the weight calculation. As noted above, the Guidelines explicitly state that the actual weight of the carrier medium is not to be taken into account in LSD cases; rather, because the potency of LSD does not depend on the weight of the carrier medium (a "hit" of LSD

on blotter paper can be just as powerful as a hit of LSD on a sugar cube), the Guidelines provide a presumptive dosage weight to be applied to cases involving LSD on a carrier medium: "treat each dose of LSD on the carrier medium as equal to 0.4 mg of LSD for the purposes of the Drug Quantity Table." Guidelines, § 2D1.1(c), n.*. The Background to § 2D1.1 explains:

> Because the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself, the Commission has determined that basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD (but different carrier weights), as well as sentences disproportionate to those for other, more dangerous controlled substances, such as PCP. Consequently, in cases involving LSD contained in a carrier medium, the Commission has established a weight per dose of 0.4 milligram for purposes of determining the base offense level.

Guidelines, § 2D1.1, Application Note 18, Background.

Using the prescribed methodology, each dose of LSD obtainable from the bottle in question would be weighted at 0.4 milligram. Of this 0.4 milligram, 0.05 is presumed to be pure LSD and 0.35 is presumed to be carrier medium, for a ratio of 1 part LSD to 7 parts carrier medium. *See id.* Thus, if there were 22.2 milligrams of pure LSD in the bottle, this would give a presumptive LSD plus carrier medium weight of 177.6 milligrams.[1]

For purposes of calculating the weight of the liquid LSD, the government assumed that the entire contents of the bottle was pure LSD. That is, the government assumed that all 13.2 grams of the liquid LSD could be translated into hits, at a conversion rate of 20,000 hits per gram of pure LSD. *See Chapman,* 500 U.S. at ——, 111 S.Ct. at 1923 (stating this conversion rate). This approach is clearly erroneous. Regardless of

whether or not one considers the solvent a carrier, the overall weight of the liquid LSD would not be the weight for Guidelines purposes. If the solvent is not a carrier, only the weight of the pure LSD is used; if the solvent is a carrier, the presumptive weight for LSD plus carrier medium is used. Neither approach gives a weight that, when added to the other LSD seized, equals or surpasses 10 grams.

The Court therefore finds that, for sentencing purposes, defendants are responsible for less than 10 grams of LSD.

---

1. Alternatively, one may divide the total weight of pure LSD (22.2 mg) by the standard hit weight (0.05 mg) to determine the number of hits (444); the number of hits is then multiplied by the presumptive dosage weight (0.4 mg) to arrive at the total weight of LSD and carrier medium (177.6 mg).