UNITED STATES of America,
Plaintiff–Appellee,

v.

Jeffrey TURNER, Defendant–Appellant.

No. 94–5415.

United States Court of Appeals,
Fourth Circuit.

Argued March 10, 1995.

Decided July 13, 1995.

**ARGUED:** James C. West, Jr., West & Jones, Clarksburg, WV, for appellant. Samuel Gerald Nazzaro, Jr., Asst. U.S. Atty., Wheeling, WV, for appellee. **ON BRIEF:** William D. Wilmoth, U.S. Atty., Wheeling, WV, for appellee.

Before ERVIN, Chief Judge, RUSSELL, Circuit Judge, and WILLIAMS, United States District Judge for the District of Maryland, sitting by designation.

Reversed and remanded by published opinion. Judge RUSSELL wrote the opinion, in which Chief Judge ERVIN and Judge WILLIAMS joined.

## OPINION

DONALD RUSSELL, Circuit Judge:

Defendant–Appellant Jeffrey Turner appeals the decision of the district court denying his motion under 18 U.S.C. § 3582(c)(2) for an order reducing his sentence for drug-related convictions. Turner argues that Amendment 488 to the Sentencing Guidelines, which amended U.S.S.G. § 2D1.1(c) and became effective November 1, 1993, applies retroactively to his case and reduces the weight of liquid lysergic acid diethylamide (LSD) which the district court should have considered in determining his base offense level. The district court applied the amendment retroactively but did not reduce Turner's offense level because it reasoned that the amendment did not alter the proper inclusion of the entire weight of pure LSD and liquid solvent for quantities of "liquid LSD." We find, however, that Amendment 488 instructs that the weight of the pure LSD alone in the relevant transactions involving liquid LSD should have been used to calculate Turner's base offense level. We therefore reverse and remand for resentencing.

I.

On March 23, 1991, a federal grand jury in the Northern District of West Virginia returned a five-count indictment against Jeffrey Turner and Wesley Horner. The indictment specifically charged Turner with three counts: conspiracy to possess with intent to distribute in excess of one gram of LSD (Count 1); distribution of LSD within 1,000 feet of a school (Count 2); and aiding and abetting in the possession with the intent to distribute marijuana within 1,000 feet of a school (Count 5). During the three-day jury trial ending on September 12, 1993, the government presented evidence demonstrating that Turner was involved in four drug transactions, three involving LSD and one involving marijuana. The jury found Turner guilty on all counts.

By an order entered January 6, 1992, the district court sentenced Turner to 108 months imprisonment as to each of the three counts on which he was convicted, with the sentences to run concurrently. The district

court also sentenced Turner to six years of supervised release, $220 restitution, and $150 special assessment. In arriving at the applicable Sentencing Guideline range, the district court considered the following to be the relevant quantities of LSD for sentencing purposes:

| | |
|---|---|
| Sale on February 5, 1991—80 doses of LSD × .00625 grams per dose | 0.50 grams |
| Sale on February 15, 1991—4.6 milliliters of "Liquid LSD" (1 ml = 1 gram) | 4.60 grams |
| Sale on February 19, 1991—3.0 milliliters of "Liquid LSD" (1 ml = 1 gram) | 3.00 grams |
| | 8.10 grams LSD |

These quantities together with the one pound of marijuana from a reverse buy on March 22, 1991, and a one-level upward adjustment for distribution within 1,000 feet of a school produced a total offense level of 31.[1] This level and Turner's criminal history category of I corresponded to an imprisonment range of 108 to 135 months.

On November 15, 1993, Turner moved the district court under 18 U.S.C. § 3583(c)(2) for an order reducing his term of imprisonment based upon Amendment 488 to the Sentencing Guidelines. In Amendment 488, which became effective on November 1, 1993, the United States Sentencing Commission amended § 2D1.1(c) by establishing a uniform weight of 0.4 milligrams (mg) per dose to be used in determining the offense level in cases involving LSD on a carrier medium. Turner contended that the amendment applies retroactively to reduce his sentence.

By an order filed December 6, 1993, the district court directed the probation office to prepare a revised presentence report. In the report, the probation officer did not recommend reducing Turner's sentence because the officer construed the amendment as affecting the weight calculation only of the 80 doses of LSD on the blotter paper carrier medium from the sale on February 5, 1991. The officer therefore decreased the weight for this transaction from 0.50 grams to 0.032 grams (80 × 0.4 mg). This application did

not reduce Turner's base offense level because his offense level was based primarily on his distribution of 7.6 milliliters of "liquid LSD."[2] On December 20, 1993, Turner filed objections to the report and asserted that the liquid LSD should be quantified under Amendment 488 by multiplying the number of doses in the liquid by the 0.4 mg conversion factor per dosage weight and not by using the total weight of the liquid LSD.

By an order filed May 19, 1994, the district court adopted the findings of the revised presentence report and declined to reduce Turner's sentence. The court applied the amendment to the LSD quantities distributed on blotter paper but did not apply the amendment to the transactions on February 15 and 19, 1991, involving the sale of liquid LSD in plastic bottles. The court reasoned that "in calculating the Guidelines involving liquid LSD, the 0.4 mg conversion factor should not be used because there is no carrier medium involved." Joint Appendix (J.A.) 10–11. In determining Turner's base offense level, the court therefore included the entire weight of the liquid LSD, 7.6 grams, using the proper one milliliter to one gram conversion ratio under the Measurement Conversion Table in U.S.S.G. § 2D1.1, comment. (n. 10).

## II.

We agree with both parties that district courts have discretion to apply Amendment 488 retroactively to reduce sentences previously imposed. *See* 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(a), (d); *United States v. Hanlin*, 48 F.3d 121, 124 n. 2 (3d Cir.1995); *United States v. Boot*, 25 F.3d 52, 54 (1st Cir.1994). The district court in this case applied the amendment retroactively but did not reduce Turner's sentence because it construed the amendment as not affecting the weight calculation for quantities of "liquid LSD." This appeal therefore presents the isolated issue of how Amendment 488 governs the determination of a defendant's base

---

1. U.S.S.G. § 2D1.1(c)(7) provides that convictions based on at least 7 grams but less than 10 grams of LSD correspond to a base offense level of 30.

2. The probation officer reduced Turner's LSD relevant conduct from 8.10 grams to 7.632 grams, an amount that was still above the 7 grams minimum corresponding to an offense level of 30.

offense level in a case involving liquid LSD. Because this issue involves the legal interpretation of the amendment, we review the district court's interpretation *de novo. United States v. Barton,* 32 F.3d 61, 65 (4th Cir.1994). We review the district court's factual findings in this inquiry for clear error. *See id.* at 64.

## A.

Amendment 488 specifically amended U.S.S.G. § 2D1.1(c) by adding the following paragraph to the notes at the end of the Drug Quantity Table:

> In the case of LSD on a carrier medium (*e.g.,* a sheet of blotter paper), do not use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 mg of LSD for the purposes of the Drug Quantity Table.

U.S.S.G. § 2D1.1(c)(n. *). The amendment also amended the Commentary to § 2D1.1 by inserting the following additional note at the end of the Application Notes:

> 18. LSD on a blotter paper carrier medium typically is marked so that the number of doses ("hits") per sheet readily can be determined. When this is not the case, it is to be presumed that each ¼ inch by ¼ inch section of the blotter paper is equal to one dose.
>
> *In the case of liquid LSD (LSD that has not been placed onto a carrier medium), using the weight of the LSD alone to calculate the offense level may not adequately reflect the seriousness of the offense. In such a case, an upward departure may be warranted.*

U.S.S.G. § 2D1.1, comment. (n. 18) (emphasis added).

The parties do not dispute that Amendment 488 applies to the February 5, 1991, transaction because that sale involved 80 doses of LSD on blotter paper. Rather, Turner objects to the district court's using the total weight of the liquid LSD obtained in the transactions on February 15 and 19, 1991. He argues that his base offense level should be determined by converting the dosage units of the liquid into LSD quantities using

the 0.4 mg conversion factor of the amendment. Turner's indictment states that each of these two transactions involved liquid containing "approximately 100 dosage units" of LSD. J.A. 5–6. The revised presentence report and the relevant police reports similarly state that the confidential informants, working under the direction of the Morgantown, West Virginia, Police Department, negotiated purchases in each of these transactions for 100 dosage units of liquid LSD.

Assuming the liquid LSD from the two transactions contained 200 dosage units, both parties correctly recognize that application of the conversion factor in Amendment 488 to the liquid LSD in this case would dramatically reduce Turner's base offense level. If the conversion factor were applied, the quantities involved in the sales on February 15 and 19, 1991, would constitute 40 mg (.04 grams) of LSD for each transaction (100 × 0.4 mg). These revised figures sharply contrast with the 4.6 grams and 3.0 grams attributed to Turner by directly including the entire volume of liquid LSD. Combining these figures with the 32 mg from the February 5, 1991, transaction and the one pound of marijuana from the March 22, 1991, transaction would reduce Turner's base offense level from 31 to 17, including the one-level upward adjustment for distribution within 1,000 feet of a school. This offense level and Turner's criminal history category of I corresponds to a Guideline range of 24–30 months, a far cry from the 108 months Turner now faces.

## B.

■ In reviewing the district court's decision in this case, we note initially that the court neglected to discuss the relevance of the new Application Note 18 in Amendment 488 to liquid LSD. Specifically, although the court presumably relied on the note in deciding that the 0.4 mg conversion factor was not applicable because liquid LSD is not on a carrier medium, the court did not discuss the full import of the note to cases involving liquid LSD. This omission is critical. Application Note 18 is the only explicit reference in the Guidelines to "liquid LSD," and the note is therefore controlling on the issue of sentences under the Guidelines involving liq-

uid LSD because Commentary that interprets or explains a specific guideline is to be given the same force and effect as the Guidelines language itself unless the Commentary "violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993).

In determining whether Application Note 18 applies in this case, we must first ascertain what constitutes "liquid LSD" under the meaning of the amendment. This determination is not immediately self-evident because LSD exists in several forms as it moves from production to distribution to consumption.[3] In its pure form, LSD is a dry, crystalline powder that is potent in dosage units of 0.05 mg per dose. *See United States v. Harwood,* 998 F.2d 91, 94 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 456, 126 L.Ed.2d 388 (1993), *and cert. denied,* —— U.S. ——, 114 S.Ct. 893, 127 L.Ed.2d 86 (1994); U.S.S.G. § 2D1.1, comment. (backg'd). Because of its potency in extremely small amounts, LSD is commonly combined with a liquid solvent such as alcohol in order to facilitate handling of the drug. This liquid form is unstable, however, because the solvent tends to evaporate. Drug traffickers have therefore developed various means to capture the LSD in a form that is stable over a long period of time. Traffickers typically place or spray the LSD solution onto carrier media such as blotter paper, gelatin, or sugar cubes. When placed on such a carrier medium, the liquid solvent evaporates and the pure LSD is absorbed into the medium. Users consume the drug either by directly ingesting the carrier medium, by dropping the medium into a beverage to release the drug, or by licking the medium until the drug is released. *See Chapman v. United States,* 500 U.S. 453, 457, 462, 111 S.Ct. 1919, 1923, 114 L.Ed.2d 524 (1991); *United States v. Jordan,* 842 F.Supp. 1031, 1032 (M.D.Tenn.1994).

■ Considering the various forms of LSD during its marketing, we conclude that the Commission intended "liquid LSD" to refer to pure LSD dissolved or suspended in a liquid solvent, the form of LSD at issue in this case. This interpretation comports with other courts' use of the term "liquid LSD." *See, e.g., Jordan,* 842 F.Supp. at 1033. Furthermore, the Commission did not intend "liquid LSD" to refer to pure LSD because the Guidelines readily distinguish between drugs contained in an impure mixture or substance and drugs in "pure" or "actual" form. *See* U.S.S.G. § 2D1.1(c) (distinguishing between weights attributed to "actual" phencyclidine (PCP) and methamphetamine and weights attributed to mixtures containing the drugs).

By defining pure LSD dissolved or suspended in a liquid solvent as "LSD not placed onto a carrier medium," Amendment 488 interprets the liquid solvent as not to be an LSD carrier medium for Guidelines purposes. This interpretation is supported by the Commission's description of carrier media in its Commentary included with the amendment in which the Commission states that it decided to include some weight attributed to the carrier medium in the 0.4 mg conversion factor because "LSD typically is marketed and consumed orally on a carrier medium." U.S.S.G. § 2D1.1, comment. (backg'd). Although this description accurately describes blotter paper, gelatin, and sugar cubes, it does not describe the liquid solvent in liquid LSD because the solvent evaporates before the drug is ingested. *See Chapman,* 500 U.S. at 457, 111 S.Ct. at 1923.

Because the liquid solutions in this case are thus "liquid LSD" controlled by Application Note 18, we must determine how the application of the amendment affects Turner's sentence. The district court's decision in *United States v. Jordan,* 842 F.Supp. 1031 (M.D.Tenn.1994), is the only reported decision to date to have considered the applicability of Amendment 488 to liquid LSD. In

**3.** This difficulty is evident in the fact that courts have sometimes incorrectly referred to pure LSD as a liquid although LSD is a dry, crystalline powder in its pure form. *See United States v. Gaines,* 7 F.3d 101, 104 (7th Cir.1993) (stating that the 0.05 mg per dosage weight of pure LSD

estimates the amount of "actual liquid LSD per dose"); *United States v. Daly,* 883 F.2d 313, 316 (4th Cir.1989) (referring to LSD in its intermediate liquid form as "pure, liquid LSD"), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990).

*Jordan,* the court addressed the proper weight to be attributed for sentencing purposes to 22.2 mg of pure LSD dissolved in 13.2 grams of a liquid solvent. *Id.* at 1032. In deciding how to calculate the weight of the drug, the court emphasized language from Application Note 18 stating that, in the case of liquid LSD, the court should weigh "the LSD alone to calculate the offense level." *Id.* at 1033. From this language, the court concluded that the 22.2 mg of pure LSD should be used for sentencing purposes. The court reasoned that the weight of the liquid solvent should not be added to the weight of the pure LSD because the liquid was not a carrier medium within the meaning of the amendment. *Id.* at 1033–34.[4]

■ We agree with the district court's reasoning in *Jordan* that Amendment 488 dictates that, in cases involving liquid LSD, the weight of the pure LSD alone should be used to calculate the defendant's base offense level under the Sentencing Guidelines.[5] As the *Jordan* court recognized, the plain language of the amendment supports this interpretation because Application Note 18 expressly authorizes the use of "LSD alone" in cases involving liquid LSD. Additionally, as noted above, by defining "liquid LSD" as "LSD that has not been placed onto a carrier medium," Application Note 18 excludes liquid solvent in which pure LSD is suspended or dissolved from its conception of "carrier medium." This interpretation renders the 0.4 mg conversion factor inapplicable to liquid LSD.

Beyond the plain language of the text, we find support for using the weight of the pure LSD alone in determining a defendant's base offense level by the fact that Application Note 18 expressly authorizes an upward departure because "using the weight of the LSD alone to calculate the offense level may not adequately reflect the seriousness of the offense." U.S.S.G. § 2D1.1, comment. (n. 18). This express authorization for upward departures would be illogical if the amendment intended courts to determine the offense level by using the entire weight of the pure LSD and the liquid solvent. A distributor, like Turner, caught with quantities of liquid LSD would face sentences higher than those for dealers who possess the same number of dosage units on blotter paper because a given number of doses of LSD weigh significantly more when combined with a liquid solvent than when placed on blotter paper. *See United States v. Marshall,* 908 F.2d 1312, 1316 & n. 3 (7th Cir.1990), *aff'd sub nom., Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). For instance, in *Chapman,* the defendant's 1,000 doses on blotter paper weighed 5.7 grams, *Chapman,* 500 U.S. at 457, 111 S.Ct. at 1923, whereas the allegedly 200 doses in the liquid in this case weighed 7.6 grams. Furthermore, given the 0.05 mg per dosage weight of pure LSD, the 0.4 mg per dosage weight in the amendment standardizes the weight of LSD on a carrier medium at an amount that represents 12.5% pure LSD. In contrast, if we assume the liquid in this case contained 200 doses, our using the entire liquid would constitute using a weight that represents only 0.13% pure LSD.

■ The government argues that the Application Note 18 expressly authorizes an upward departure because the Commission recognized liquid LSD as a "more dangerous" form of the drug than LSD on carrier

---

4. The district court in *Jordan* held in the alternative that, even if it considered the liquid solvent a carrier medium, the overall weight of the liquid LSD would not be the weight for sentencing purposes. In such a case, the court reasoned that a court could use the presumptive weight of LSD plus carrier medium as determined by multiplying the weight of pure LSD by eight, the ratio of the weight of pure LSD to the 0.4 mg conversion factor in Amendment 488. The court also alternatively reasoned that a court could determine the number of hits contained in the liquid and then multiply the number by 0.4 mg. *Jordan,* 842 F.Supp. at 1033–34 & n. 1.

5. The court in *Jordan* concluded that the weight of the pure LSD should be used in determining the defendant's base offense level under the Guidelines and in determining the applicability of the statutory minimum sentence under 21 U.S.C. § 841(b)(1). *See Jordan,* 842 F.Supp. at 1032–33. Although we agree with the court's conclusion regarding the weight of the drug for Guidelines purposes, we reserve judgment on how Amendment 488 affects a sentencing court's determination of the weight of liquid LSD for purposes of applying the relevant statutory minimum sentence in 21 U.S.C. § 841(b)(1). *See infra* Section II.D.

media and therefore intended to punish primary distributors who market liquid LSD more severely than secondary ones who market LSD on carrier media. The government, however, offers no evidence to support its claim that liquid LSD is a "more dangerous" form of the drug; and this claim seems contradicted by the fact that the dangerousness of liquid LSD hinges, not on its specific form, but on the concentration of pure LSD contained in the liquid solution. In fact, liquid LSD appears less dangerous than LSD on the standard blotter paper carrier medium because liquid LSD is a less stable form of the drug and is further removed from ingestible form.[6]

Moreover, the government's inference regarding punishment contradicts the Supreme Court's interpretation in *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), of Congress' approach to punishing drug trafficking. In *Chapman,* the Court held that by punishing defendants under 21 U.S.C. § 841(b)(1) according to the weight of a "mixture or substance containing a detectable amount of" the controlled substance, Congress "did not want to punish retail traffickers less severely, even though they deal in smaller quantities of the pure drug, because such traffickers keep the street markets going." *Id.* at 461, 111 S.Ct. at 1925 (citing H.R.Rep. No. 99–845, pt. 1, p. 12 (1986)). The Commission implicitly adopted this reasoning by using the same "mixture or substance" language in formulating the process to determine a defendant's base offense level. *See id.* at 457, 111 S.Ct. at 1923. Although Amendment 488 alters the application of the "mixture or substance" rule to LSD, no evidence indicates that the Commission intended to depart from the principle announced in *Chapman* that punishment does not depend on whether a defendant is a primary or secondary distributor. Rather, the Commentary to the amendment clearly indicates that the Commission's purpose behind the amendment was to remove sentencing disparities based on the varied

weight of LSD carrier media and to harmonize the sentences for LSD distribution with the sentences for offenses involving more dangerous controlled substances, such as PCP. *See* U.S.S.G. § 2D1.1, comment. (backg'd).

■ We therefore conclude that the express reference to an upward departure in Application Note 18 further supports our determination that courts should initially look to the weight of the pure LSD alone in determining a defendant's base offense level. We hold that the Commission intended the express reference to an upward departure to allow courts to control for the fact that offense levels for most other controlled substances are based upon the entire weight of the mixture or substance containing the controlled substance without regard to purity. *See* U.S.S.G. § 2D1.1(c)(n. *). This fact includes the 0.4 mg standardized weight in Amendment 488, which includes weight attributed to the carrier medium. *See* U.S.S.G. § 2D1.1, comment. (backg'd). Because the Commission includes the carrier medium weight in other contexts, it expressly stated that an upward departure may be warranted when using the weight of the LSD alone "may not adequately reflect the seriousness of the offense."

In this respect, the express authorization parallels the Commission's notation at the end of the Typical Weight Per Unit Table in U.S.S.G. § 2D1.1, in which the Commission authorizes sentencing courts to use the typical weight of the actual drug per dose for certain controlled substances when courts know the number of doses but not the total weight of the drug at issue. *See* U.S.S.G. § 2D1.1, comment. (n. 11). In recognizing that the weight excludes weight attributed to the carrier medium, the Commission reasons that "use of this table provides a very conservative estimate of the total weight." *Id.* Similarly, the Commission's express reference to an upward departure in Application Note 18 recognizes that the weight of the pure LSD is "conservative" in relation to the weight of the drug if it were on a carrier

---

**6.** None of the relevant literature this Court reviewed indicates that users ever consume LSD directly by ingesting liquid LSD. Users hypothetically could place a drop of liquid LSD on their tongue, but this imprecise method could be

highly dangerous because LSD is potent in such extremely small dosage units. Users' ability to ingest liquid LSD presumably also depends on what liquid constitutes the solvent in the LSD solution.

medium. This reference would be unnecessary had the Commission not intended courts to use the weight of the LSD alone in calculating a defendant's base offense level.

In addition to the language of Application Note 18, interpreting the note to authorize the use of the weight of the pure LSD alone, and not the entire weight of the pure LSD and the liquid solvent, comports with the Commission's reasoning underlying its passage of Amendment 488. In its Commentary to the amendment, the Commission explicitly recognized that the weights of LSD carrier media "vary widely" and that "basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD." U.S.S.G. § 2D1.1, comment. (backg'd). Sentence discrepancies undoubtedly occur in cases involving LSD in a liquid solvent as well as LSD on a carrier medium. As the weight of the same number of LSD doses can vary widely depending on whether those doses are placed on blotter paper or absorbed into a sugar cube, the weight of the same number of doses placed in a liquid can vary depending on the concentration of the pure LSD in the liquid solvent.[7] It is highly unlikely that the Commission would seek to eliminate sentence discrepancies when the LSD is placed on a carrier medium while allowing such discrepancies when the LSD is distributed in a liquid solvent. Such an approach would contradict two of the fundamental purposes of the Guidelines: uniformity and proportionality in sentencing. See. 28 U.S.C. § 991(b)(1)(B) (Congress established the Sentencing Commission, in part, to create sentencing policies that "avoid[ ] unwarranted sentencing disparities"); U.S.S.G., Ch. 1, Pt. A, at p. 2 (1994) (policy statement). In authorizing courts to use the weight of LSD alone in cases involv-

ing liquid LSD, the Commission therefore eliminated sentencing discrepancies based on the weight of the liquid solvent.

In reaching our holding, we note that Amendment 488's instruction to use the weight of the LSD alone to determine a defendant's base offense level does not contravene the Supreme Court's holding in *Chapman*. In *Chapman*, the Supreme Court addressed the issue of whether the weight of LSD carrier media should be included with the weight of the pure LSD for determining the weight of the drug in imposing the appropriate statutory sentence under 21 U.S.C. § 841(b)(1). Section 841(b)(1) provides for mandatory minimum and maximum sentences for LSD trafficking involving certain weights of a "mixture or substance containing a detectable amount" of LSD. In concluding that the weight of LSD carrier media must be included, the Court noted that neither § 841(b)(1) nor the Sentencing Guidelines defined the words "mixture" or "substance." *Id.* at 461–62, 111 S.Ct. at 1925–26. The Court therefore applied the ordinary dictionary meaning of the terms and concluded that the combination of the pure LSD and blotter paper is a "mixture" within the meaning of the statute.[8] *Id.* at 462, 111 S.Ct. at 1925.

■ Amendment 488 does not contradict *Chapman* because the Sentencing Commission has the authority to review the work of the courts and revise the Guidelines by adopting an interpretation of a particular guideline in conflict with prior judicial constructions of that guideline. *See Stinson,* — U.S. at ——, 113 S.Ct. at 1919; *see also Braxton v. United States,* 500 U.S. 344, 348, 111 S.Ct. 1854, 1857, 114 L.Ed.2d 385 (1991) (holding that Congress necessarily contemplated that the Commission would review the work of the courts and revise the Guidelines).

---

7. For instance, the two transactions at issue in this case allegedly both contained 100 doses of LSD, although one transaction involved 4.6 grams of LSD and the other involved 3.0 grams.

8. The Court reasoned:
LSD is applied to blotter paper in a solvent, which is absorbed into the paper and ultimately evaporates. After the solvent evaporates, the LSD is left behind in a form that can be

said to "mix" with the paper. The LSD crystals are inside of the paper, so that they are commingled with it, but the LSD does not chemically combine with the paper. Thus, it retains a separate existence and can be released by dropping the paper into a liquid or by swallowing the paper itself. The LSD is diffused among the fibers of the paper.
*Chapman,* 500 U.S. at 462, 111 S.Ct. at 1926.

At the time of the *Chapman* holding, the Guidelines mirrored the language in § 841(b)(1) and provided that the weight of a LSD, as with other controlled substances, "refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c)(n. *) (1990); *cf. United States v. Neal,* 46 F.3d 1405, 1406 (7th Cir.1995) (en banc), *cert. granted,* —— U.S. ——, 115 S.Ct. 2576, 132 L.Ed.2d 826 (1995).

However, "determin[ing] that basing offense levels on the entire weight of LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD," U.S.S.G. § 2D1.1, comment. (backg'd), the Sentencing Commission responded to the *Chapman* decision by enacting Amendment 488. *Cf. Stinson,* —— U.S. at ——, 113 S.Ct. at 1919 ("Amended commentary is binding on the federal courts...."). This disparity raised special problems of fairness and consistency because LSD is marketed by the dose and not by weight. *Jordan,* 842 F.Supp. at 1033. Amendment 488 removed the "mixture or substance" language relative to determining the weight of LSD, and the Supreme Court's interpretation in *Chapman* therefore no longer controls the weight of LSD used in determining a defendant's base offense level under the Guidelines. Moreover, if the amendment's approach conflicts with the method to determine a defendant's statutory sentence under 21 U.S.C. § 841(b)(1), the Commission expressly cites *Chapman* to state in its Commentary to Amendment 488 that application of the 0.4 mg conversion factor "does not override the applicability of 'mixture or substance' for the purpose of

applying any mandatory minimum sentence." U.S.S.G. § 2D1.1, comment. (backg'd).

Amendment 488 also does not contravene *Chapman* because the Supreme Court in *Chapman* did not address the proper determination of the weight of LSD when the transactions involve liquid LSD, as in this case. *See Chapman,* 500 U.S. at 457–59, 111 S.Ct. at 1923–24; *cf. United States v. Walker,* 960 F.2d 409, 412 (5th Cir.) (distinguishing *Chapman* because it did not address liquid solutions containing controlled substances), *cert. denied,* —— U.S. ——, 113 S.Ct. 443, 121 L.Ed.2d 362 (1992). Instead, the Court addressed the weight of the drug combined with carriers used by retail drug dealers, such as blotter paper, gelatin, and sugar cubes; and it based its holding on its conclusion that LSD on blotter paper, the most common carrier medium, is a "mixture or substance containing a detectable amount" of LSD. *See Chapman,* 500 U.S. at 462, 111 S.Ct. at 1925. In contrast to the liquid solvent in liquid LSD, these carrier media are often directly ingested with the LSD and are analogous to cutting agents and dilutants ingested with other drugs, such as cocaine. *See id.; United States v. Daly,* 883 F.2d 313, 318 (4th Cir.1989), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990).

After *Chapman,* the Commission recognized the significance of the distinction between usable and unusable carrier media in further defining the term "mixture or substance" in the Guidelines. *See* U.S.S.G. § 2D1.1, comment. (n. 1). Specifically, circuit courts after *Chapman* disagreed as to whether unusable, unmarketable carrier media should be included in determining the weight of controlled substances for sentencing purposes.[9] In Amendment 484, effective

9. *Compare, e.g., United States v. Palacios–Molina,* 7 F.3d 49, 54–55 (5th Cir.1993) (weight of non-usable liquid solvent containing cocaine should not be included in calculation of drug amount for determining base offense level) *and United States v. Acosta,* 963 F.2d 551, 556–57 (2d Cir.1992) (weight of creme liqueur in which cocaine was dissolved should not be included in calculating base offense level) *and United States v. Jennings,* 945 F.2d 129, 136–37 (6th Cir.1991) (weight of poisonous by-products used in "cooking" methamphetamine should not be used for determining base offense level), *clarified by* 966 F.2d 184 (6th Cir.1992) *with United States v. Lopez–Gil,* 965

F.2d 1124, 1127–28 (1st Cir.) (absent its metal parts, weight of entire suitcase manufactured of fiberglass-cocaine mixture correctly considered for determining base offense level), *cert. dismissed,* 504 U.S. 980, 112 S.Ct. 2959, 119 L.Ed.2d 581 (1992), *and cert. denied,* —— U.S. ——, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992), *and United States v. Walker,* 960 F.2d 409, 412–13 (5th Cir.) (entire amount of wastewater solution containing a trace amount of methamphetamine should be used for determining base offense level), *cert. denied,* —— U.S. ——, 113 S.Ct. 443, 121 L.Ed.2d 362 (1992), *and United States v. Restre-*

the same date as Amendment 488, the Commission responded to this inter-circuit conflict by adding to the Guidelines that "[m]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used." *Id.*

Although this definition is not binding on Guidelines sentencing for LSD offenses because Amendment 488 supersedes the application of the general mixture or substance approach for LSD, *see* U.S.S.G. § 2D1.1(c)(n. *) (stating that courts should use the "mixture or substance" approach "unless otherwise specified"), the definition further supports the conclusion that the Commission intended Application Note 18 to dictate that sentencing courts should not include the weight of the liquid solvent in liquid LSD when determining a defendant's base offense level. Amendment 484 demonstrates the Commission's intention that not all materials that are combined or "mixed" with controlled substances should be included in the weight of the drug for sentencing purposes. The liquid solvent thus may not be included in the definition in Amendment 484 of "mixture or substance" given that, although wholesale traffickers use the solvent to apply the drug to ingestible carrier media, consumers do not "use" the solvent because it evaporates from the carrier media before the media are ingested. *See Chapman,* 500 U.S. at 457, 111 S.Ct. at 1923. *But cf. United States v. Lowden,* 955 F.2d 128, 131 (1st Cir.1992) (holding, under plain error standard, that basing sentence on LSD and water in which it was dissolved did not violate due process).

For the foregoing reasons, we thus remand Turner's case to the district court for resentencing. In the resentencing, the court must determine the weight of the pure LSD contained in the liquid LSD in this case. After it determines the weight of the pure LSD,

the court must use that weight to calculate Turner's base offense level. If the court reasons that using the weight of the LSD alone does not reflect the seriousness of Turner's offense, the court remains free to depart upward from the Guideline range under U.S.S.G. § 2D1.1, comment. (n. 18).

## C.

In remanding, we recognize that the district court may not be able to determine the exact weight of pure LSD in the liquids involved in this case because, in contrast to *Jordan,* the revised presentence report does not include any findings regarding the concentration of pure LSD contained in the liquid LSD. We note that when the weight of the pure LSD is unknown in cases involving liquid LSD, the sentencing court is left with two viable options: (1) determine the number of doses and multiply the number by 0.4 mg, the standardized weight in Amendment 488; or (2) determine the number of doses and multiply the number by 0.05 mg, the weight of actual LSD per dose.[10]

In determining which of these alternatives better follows from Amendment 488, we return to our conclusion above that the amendment construes the liquid solvent in liquid LSD as not to be a carrier medium for Guidelines purposes. Given this conclusion, it would contradict the amendment to apply the 0.4 mg conversion factor in cases involving liquid LSD, when that weight expressly applies to LSD on a carrier medium and includes weight attributed to the carrier medium. *See* U.S.S.G. § 2D1.1, comment. (backg'd). Furthermore, applying the 0.4 mg conversion factor when the weight of the pure LSD is unknown would lead to inconsistent results depending on the sophistication of the government's laboratory analysis of the drugs at issue. Specifically, the sentencing court would include weight attributable to a carrier medium when the government

po–Contreras, 942 F.2d 96, 99 (1st Cir.1991) (entire weight of a beeswax statues containing cocaine correctly considered in determining base offense level), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 955, 117 L.Ed.2d 123 (1992). In the text of Amendment 484, the Commission stated that the type of materials included in *Lopez–Gil, Walker,* and *Restrepo–Contreras* should not be included in

determining the "mixture or substance" containing a controlled substance. *See* U.S.S.G. § 2D1.1, comment. (n. 1).

10. For the reasons outlined in the preceding section, we conclude that using the total weight of the liquid LSD is not a viable option.

could not prove the weight of the pure LSD but would exclude weight attributable to a carrier medium when the government could determine the weight of the pure drug. Under such an approach, the defendant would potentially face a higher base offense level if the government could not determine the weight of the pure drug. Hinging a defendant's sentence on the government's laboratory analysis of the drugs at issue contravenes the Guidelines' goal of proportionality in sentencing because the sentence is unrelated to the actual severity of the defendant's conduct. *See* U.S.S.G., Ch. 1, Pt. A, at p. 2 (1994) (policy statement) (stating that Guidelines seek proportionality in sentencing by imposing different sentences for criminal conduct of different severity).

■ We therefore hold that, if evidence does not exist from which the district court can ascertain the weight of the pure LSD, the court should calculate the weight of the drug by determining the number of dosage units contained in the liquid LSD and by multiplying the number of units by the 0.05 mg weight of pure LSD per dose.[11] As in using the weight of the pure LSD, the court remains free to depart upward if it determines that using the 0.05 mg conversion factor does not reflect the seriousness of Turner's offense. *See* U.S.S.G. § 2D1.1, comment. (n. 18). We emphasize the courts should use the 0.05 mg conversion factor method only in cases in which the court cannot determine the weight of the pure drug contained in the liquid LSD. However, in such cases, we conclude that using the 0.05 mg factor is consistent with our conclusion above that the liquid solvent in liquid LSD is

not a carrier medium for Guidelines purposes and with Amendment 488's primary approach that courts should use the weight of the LSD alone, and not the weight of the LSD and its liquid solvent or any potential carrier medium, in determining a defendant's base offense level.[12]

### D.

■ Finally, we add that in determining Turner's sentence by using either the weight of the pure LSD or the weight of the LSD as calculated by the 0.05 mg conversion factor method, the district court may not impose a shorter sentence than the relevant statutory minimum prescribed in 21 U.S.C. § 841(b)(1). *See* U.S.S.G. § 5G1.1(b) (stating that a statutorily required minimum sentence shall be the Guideline sentence where the mandatory sentence is greater than the maximum of the guideline range). Circuit courts have split on the issue of whether a sentencing court should use the entire weight of the LSD and carrier medium or should use the standardized weight in Amendment 488 to determine the weight of the drug for the purpose of applying any mandatory minimum sentence. The First, Third, Fifth, Seventh, and Tenth Circuits have held, pursuant to *Chapman,* that pure LSD and its carrier medium constitute a mixture or substance containing a detectable amount of LSD and that courts should therefore use the entire weight of the LSD and carrier medium in determining the weight of the drug for statutory minimum purposes. *See United States v. Hanlin,* 48 F.3d 121 (3d Cir.1995); *United States v. Neal,* 46 F.3d 1405 (7th Cir.1995) (en banc),

11. Turner urges us to direct the district court to compute his base offense level by using the 200 dosage units the liquid LSD allegedly contained in this case. The district court, however, never made a factual finding as to the number of dosage units contained in the liquid LSD, and it would be inappropriate for this Court to make an independent factual determination regarding the number of dosage units.

12. In deciding that courts may use the 0.05 mg conversion factor, we recognize that, in passing Amendment 488, the Commission removed the weight of pure LSD per dose (0.05 mg) from the Typical Weight Per Unit Table in U.S.S.G. § 2D1.1, comment. (n. 11). Along with other controlled substances listed in the Table, the

Commission had included that weight and instructed courts to determine the weight of the drug by multiplying the number of doses by .05 mg if the court did not know the weight of the controlled substance and more reliable case-specific evidence of the total weight were unavailable. *See* U.S.S.G. § 2D1.1, comment. (n. 11) (1992). Despite this removal, the Commentary to Amendment 488 clearly indicates that the Commission still endorses 0.05 mg as a valid standardization of the actual weight of LSD per dose. We therefore conclude that the Guidelines authorize using the 0.05 mg weight when "more reliable case-evidence" of the weight of the pure LSD is unavailable.

*cert. granted,* —— U.S. ——, 115 S.Ct. 2576, 132 L.Ed.2d 826 (1995); *United States v. Pardue,* 36 F.3d 429 (5th Cir.1994) (per curiam), *cert. denied,* —— U.S. ——, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995); *United States v. Mueller,* 27 F.3d 494 (10th Cir.1994); *United States v. Boot,* 25 F.3d 52 (1st Cir. 1994). In contrast, the Ninth Circuit has held that Amendment 488 merely standardized the amount of carrier medium under *Chapman* that can be considered to "mix" with LSD and that courts should therefore calculate the weight for statutory minimum purposes by using the 0.4 mg conversion factor in the amendment. *United States v. Muschik,* 49 F.3d 512 (9th Cir.1995).[13] None of these courts considered how to determine the weight of liquid LSD for purposes of determining a statutory minimum sentence.

We need not decide whether the district court should use the entire weight of the liquid LSD or some other weight in applying any statutory minimum sentence. The parties have not briefed this issue and the district court did not address this issue below.

### III.

For the foregoing reasons, we reverse the district court's determination of Turner's sentence and remand for resentencing in accordance with this opinion.

*REVERSED AND REMANDED.*

---

**13.** A panel of the Eighth Circuit in *United States v. Stoneking,* 34 F.3d 651 (8th Cir.1994), also concluded that the weight of the drug for such purposes should be calculated by using the 0.4 mg per dosage weight in Amendment 488. The opinion, however, was vacated pending rehearing en banc. *See id.* at 655.