**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Donald BARTON, Defendant–Appellant.**

**No. 93–5350.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 11, 1994.

Decided Aug. 5, 1994.

---

**ARGUED:** Hunt Lee Charach, Fed. Public Defender, Charleston, WV, for appellant. Paul Thomas Farrell, Asst. U.S. Atty., Huntington, WV, for appellee. **ON BRIEF:** Charles T. Miller, U.S. Atty., Huntington, WV, for appellee.

Before HALL and MICHAEL, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed in part, vacated in part, and remanded for resentencing by published opinion. Judge MICHAEL wrote the opinion, in which Judge K.K. HALL and Judge OSTEEN joined.

## OPINION

MICHAEL, Circuit Judge:

After being arrested in a government sting operation, Donald Barton pled guilty to attempted money laundering under 18 U.S.C. § 1956(a)(3)(B) and was sentenced to 42 months in prison. On appeal, Barton raises several assignments of error regarding his guilty plea and sentence. We affirm his conviction and sentencing, except for the district court's increase of his base offense level

pursuant to U.S.S.G. § 2S1.1(b)(1) (1989) (relating to whether he "knew" the funds were the proceeds of drug trafficking). We therefore vacate Barton's sentence and remand for resentencing in accordance with this opinion.

## I.

In December 1988, special agents of the IRS established contact with Barton through a cooperating federal prisoner working at their direction. Thereafter, during a series of telephone calls and eventual face-to-face meetings in Dallas, two government informants, Kerry Anthony and Herb Toms, discussed with Barton his willingness and ability to help a cohort of Anthony launder and evade taxes on sums up to $2 million. Barton described a number of possible schemes to launder money without making the IRS suspicious and said his fee was ten percent. In early March 1990, Barton was contacted again by Anthony and Toms, who asked if he could still launder some drug money. Barton then had follow-up telephone calls with Anthony's supposed associates, Bruce Shuck and Steve Stephens, who were actually undercover Parkersburg, West Virginia, Narcotics Task Force officers deputized as federal agents. Barton told Shuck and Stephens that he could launder up to $7 million through a business colleague, Gail Eldridge.

On March 12, 1990, Barton flew from Texas to Parkersburg, West Virginia, and met with Anthony and his "associates," Shuck and Stephens, who were posing as drug dealers needing to launder $500,000. Shuck told Barton that the money was made in cocaine deals. Barton expressed his indifference to the source of the funds and said he was willing to risk jail to make his $50,000 commission. He outlined three alternative methods for laundering the money and said he was prepared to implement the one Shuck and Stephens preferred. Barton described with the most particularity the scheme with the fastest turnaround time (five days). It involved depositing the money in the nonprofit account of Eldridge, whose banking transactions, according to Barton, were not scrutinized if under $7 million at a time. Barton said that Eldridge would wire the money to the account of Barton's private corporation, and Barton would write a number of smaller checks to "investors" named by the agents. The agents handed Barton a briefcase, telling him it contained $500,000; it actually contained only $50,000. Upon accepting the briefcase, Barton was arrested.

Barton immediately executed a use-immunity agreement with the United States Attorney and began working as an informant. His help led to the conviction of four others. In August 1992, shortly after Barton completed his undercover work for the government, he was indicted for attempting to launder money "believed [by him] to be the proceeds of specified unlawful activity," i.e., drug trafficking, in violation of 18 U.S.C. § 1956(a)(3)(B). JA 158. In a plea bargain with an Assistant United States Attorney, Barton agreed to plead guilty, and the Assistant promised to recommend to her office that it move at sentencing for a downward departure because of Barton's substantial assistance.

At his sentencing hearing Barton argued, as he does here, that his base offense level should be decreased under U.S.S.G. § 2X1.1(b)(1) because his actions at most amounted to an unconsummated attempt. The district court rejected this argument, finding that "but for" the intervening arrest, Barton would have completed the crime. JA 279. Further, the court imposed a three-level enhancement under U.S.S.G. § 2S1.1(b)(2)(D), which authorizes graduated increases in the base offense level if the amount of funds involved was over $100,000. Although only $50,000 was in the briefcase, the court found that Barton believed he was accepting $500,000 and had said he was willing and able to launder up to $7 million. According to the court, from Barton's standpoint $500,000 was "the negotiated . . . the understood and the believed amount" involved in the transaction. JA 287. The court added another three-level enhancement pursuant to U.S.S.G. § 2S1.1(b)(1) (1989), which authorizes an enhancement if the defendant "knew" that the funds were the proceeds of unlawful drug activity. Barton objected to both enhancements. Finally, the district court awarded Barton a three-level reduction for acceptance of responsibility and

a further two-level downward departure based on the government's substantial assistance motion. As noted, Barton was sentenced to 42 months imprisonment. Of the issues raised by Barton on appeal, we find it necessary to address only three, all relating to sentencing.

## II.

■ Barton first challenges the district court's refusal to decrease his offense level by three points under U.S.S.G. § 2X1.1(b)(1), arguing that his actions did not result in a substantially completed attempt. Section 2X1.1(b)(1) provides:

> If an attempt, decrease by 3 levels, unless the defendant completed all acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

The district court refused the decrease after finding that Barton completed or would have completed the substantive offense (attempted money laundering) but for his arrest. That determination involved fact-finding, and we review it under a clearly erroneous standard. *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989).

Barton contends that his schemes were so patently ridiculous that only government agents out to make a sting would tolerate listening to them. It was obvious, he says, that not one of his schemes could ever have led to the successful completion of a money laundering transaction. Perhaps Barton did engage in some outlandish puffery to establish his credentials with the government informants and undercover agents. Indeed, he admits he "was willing to do or say anything in order to get his hands on the cash Anthony [the informant] said he had." Appellant's

Br. at 7. Our job, however, is not to judge Barton's potential as a money launderer. Despite Barton's protestations of naivete and ineptitude, we cannot say the district court erred in finding that he could have fulfilled his role in the money laundering plan.

Before and at the meeting in Parkersburg, Barton described at least three different schemes he had worked out for laundering funds, and one, the plan involving Gail Eldridge's non-profit account, appeared to be well formulated. Prior to the Parkersburg meeting undercover agent Shuck himself spoke to Eldridge, and she also told him of her ability to launder up to $7 million through her non-profit bank accounts. At the Parkersburg meeting Barton told Shuck that Eldridge would receive half of the ten percent laundering fee. Barton also reported that he had told Eldridge if her services were used, he and Anthony would be bringing her anywhere from $200,000 to $7 million. Shuck told Barton that he wanted to go with the scheme involving Eldridge, and he and Barton discussed the best way for Barton to carry the funds from Parkersburg to Eldridge in Atlanta. Barton's acceptance of the suitcase was the first step or initiation of his planned delivery of what he believed was drug money to his associate, Eldridge, through whose accounts it would be laundered. Nothing more is required to substantially complete an attempt to launder money within the meaning of the statute.[1] The district court did not clearly err in refusing Barton the three-level decrease under § 2X1.1(b)(1).

## III.

Barton next argues that the district court erred in enhancing his base offense level under U.S.S.G. § 2S1.1(b)(2), which applies to money laundering offenses and provides: "If the value of the funds exceeded $100,000, increase the offense level as follows: ... (D)

---

1. 18 U.S.C. § 1956(a)(3)(B) prohibits "conduct[ing] or attempt[ing] to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity ... with the intent to conceal or disguise the nature of property believed to be the proceeds of specified unlawful activity." Subsection (c)(2) of § 1956 defines "conducts" to include "initiating, concluding, or participating in initiating or concluding a transaction." Subsection (c)(3) defines "transaction" to include "transfer, delivery or other disposition[.]" Subsection (c)(4)(A) defines "financial transaction" as "a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means...."

More than $350,000 add 3 [levels.]" To review the district court's determination, we must first decide how the "value of the funds" is to be measured in a government sting operation when the offense progressed only as far as acceptance of the government's flash money. This issue involves the legal interpretation of a guideline term, and our review is *de novo*. *Daughtrey*, 874 F.2d at 217–18.

Barton contends that the "value of the funds" should be determined by the amount actually in the briefcase ($50,000) rather than by the amount the agents said it contained ($500,000). ($500,000 was also the amount Barton intended and agreed to launder.) Barton bases his contention on the guideline commentary which states, "[t]he amount of money involved is included as a factor because it is an indicator of the magnitude of the criminal enterprise, and the extent to which the defendant aided the enterprise." U.S.S.G.§ 2S1.1(b)(2), comment. According to Barton, the commentary requires a court to consider how much the defendant's participation actually would have aided the enterprise had his attempt been successfully completed, and he asserts the proper measure is the actual amount of money involved, here $50,000.

The government argues that it is illogical to compute the "value of the funds" based on the amount of flash money federal agents can muster to stage a particular sting. Indeed, had the government put $5 million in the briefcase, Barton's theory of measurement would result in attributing that sum to him for sentencing.

■ For two reasons, we decline to hold that sentencing courts are limited to considering just the amount of flash money in fact-finding to determine the "value of the funds" for enhancement purposes under U.S.S.G. § 2S1.1(b)(2). First, there would be a potential for the government to affect sentencing

variables simply by adjusting the amount of flash money used by undercover agents in sting operations. *See United States v. Connell*, 960 F.2d 191, 196 (1st Cir.1992) (stating in dicta, "[i]t cannot be gainsaid that the sentencing guidelines, by their very nature, may afford the opportunity for sentencing factor manipulation, particularly in sting operations"). Second, focusing only on the flash money sum ignores an important factor—what the defendant agreed and intended to launder, and we hold that this factor may be considered by the sentencing court in making a determination under § 2S1.1(b)(2). *See United States v. Fuller*, 974 F.2d 1474, 1483–84 (5th Cir.1992), *cert. denied*, — U.S. ——, 114 S.Ct. 112, 126 L.Ed.2d 78 (1993).[2]

■ We next review, for clear error, the district court's factual finding that Barton engaged in a $500,000 transaction. All parties, Barton in actuality and the agents in their undercover roles, came to terms on a $500,000 deal. Barton himself set the outside limits by saying he would and could launder up to $7 million. In the end, he agreed and intended to launder $500,000 and accepted the briefcase believing it contained that amount. Barton's intent and agreement is undisputed, and the district court's finding (JA 287) that Barton was "chargeable with" a $500,000 transaction is not clearly erroneous. Based on this finding, the three-level enhancement under § 2S1.1(b)(2) was appropriate.

## IV.

■ In his final challenge to his sentence, Barton claims that the district court erred in increasing his offense level by three points under U.S.S.G. § 2S1.1(b)(1) (1989), the version of the guideline applicable to his case. The 1989 version of § 2S1.1(b)(1) provides:

If the defendant knew that the funds were the proceeds of an unlawful activity involv-

---

2. Our holding is consistent with the analysis prescribed by the separate guidelines governing attempts and relevant conduct. Both indicate that the defendant's intent is to be considered in applying specific offense characteristics. *See* U.S.S.G. § 2X1.1(a) & comment. (n.2) (the base offense level for an attempt is established by using the guideline for the object offense, "plus

any adjustments from such guideline for any *intended offense conduct that can be established with reasonable certainty*") (emphasis added). *See also* U.S.S.G. § 1B1.3(a)(3) (providing that relevant conduct, including all harm that was the "object of" the acts of the defendant, must be considered in the application of specific offense characteristics).

ing ... narcotics or other controlled substances, increase by 3 levels.[3]

Barton readily concedes that he "believed Agent Shuck was handing over drug money. Shuck told Barton it was drug money." Appellant's Br. at 35. However, Barton contends that the guideline should not apply to him because the funds were actually government sting money he merely "believed" to be drug proceeds. He argues that the 1989 version sanctions only actual knowledge, not belief, because the 1991 amendment to § 2S1.1(b)(1) changed the language from "knew" to "knew or believed." Our review is *de novo* because a legal interpretation is required.

The two circuits that have addressed this issue are divided in result. In *United States v. Breque*, 964 F.2d 381 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1253, 122 L.Ed.2d 652 (1993), the Fifth Circuit held that under § 2S1.1(b)(1) (1989) actual knowledge of the source of the funds is required. *Id.* at 389. *Breque* relied on the Sentencing Commission's statement of purpose accompanying the 1991 guideline amendment, which states:

> Section 2S1.1(b)(1) is amended by inserting "or believed" immediately following "knew".
>
> . . . .
>
> This amendment revises this guideline to reflect the enactment [in 1988] of subsection (a)(3) of 18 U.S.C. § 1956 that authorizes "sting" operations in money laundering cases. Such cases differ from those prosecuted under subsection (a)(1) in that

the money being laundered is not actually criminal proceeds, but is government "sting" money that an undercover officer represents to be criminal proceeds.[4]

U.S.S.G. App. C, amend. 378 (1991). The court in *Breque* reasoned that because § 2S1.1(b)(1) was "amended expressly to include defendants caught in Government sting operations[,] [t]he addition of the term 'believe' to effect this purpose suggests quite strongly that the word 'know' in the [1989 version] is insufficient, by itself, to encompass the state of mind of defendants caught laundering money that is not, in fact, the proceeds of drug activity." *Breque*, 964 F.2d at 389.

The government urges that we reject *Breque* and follow *United States v. Perez*, 992 F.2d 295 (11th Cir.1993), which held that mere belief is sufficient to trigger an enhancement under the 1989 version of the guideline. The *Perez* court appears to have concluded that the 1988 amendment to the money laundering statute amended U.S.S.G. § 2S1.1(b)(1) by implication. The court reasoned that it was "highly unlikely" that Congress intended for factual impossibility to remain a defense against sentencing enhancement when it had amended 18 U.S.C. § 1956(a) to eliminate factual impossibility as a defense against conviction. *Id.* at 298.

The Sentencing Commission did, in the normal course of its work, amend the guideline to dovetail with the new subsection (a)(3) in the statute. We think that approach is preferable to the *Perez* approach of forcing an amendment by implication, particularly

---

**3.** The government does not contest the application of the 1989 version to Barton's case. Barton pled guilty to an indictment charging him under 18 U.S.C. § 1956(a)(3)(B) with an attempt (in March, 1990) to launder money "believed [by him] to be the proceeds of specified unlawful activity," i.e., drug trafficking. JA 158. At sentencing, the district court initially made the finding that "under the application of the 1989 guideline [Barton] factually knew it was drug money at the time...." JA 283. Later, the court broadened its finding to say that Barton "knew or had reason to believe ... that the proceeds of illegal drug activity were involved...." JA 294. We conclude that the 1989 version (in effect when Barton committed the crime) applies because the 1991 version, which added "or believed," would subject Barton to a

harsher sentence in violation of the Ex Post Facto Clause of the Constitution. *See United States v. Morrow*, 925 F.2d 779, 782–83 (4th Cir.1991).

**4.** Subsection (a)(3) of 18 U.S.C. § 1956 was added to the money laundering statute by the Anti–Drug Abuse Act of 1988, P.L. 100–690, § 6465, 102 Stat. 4181, 4375 (1988). The subsection specifically outlaws the laundering of money "*represented* to be the proceeds of specified unlawful activity ..." (emphasis added). And, "the term 'represented' means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section." 18 U.S.C. § 1956(a)(3).

since amendment by implication is disfavored. *See United States v. Joya–Martinez,* 947 F.2d 1141, 1143–44 (4th Cir.1991) (refusing to hold that amendment of one section of immigration law amended by implication a second, inconsistent section).

The holding in *Perez* was based in part on the general practice of courts to read "know" to mean "believe" in interpreting criminal statutes. 922 F.2d at 297. We would adopt that approach here if the Sentencing Commission's statement of purpose (set out above) did not give us such persuasive guidance to the contrary. The amendment of the guideline to add the words "or believed" was, according to the statement of purpose, a "revis[ion] ... to reflect the enactment" of a new law designed to net targets of government stings who could not know in fact that the money was from illegal trade. Two points are apparent from the statement. First, the use of "knew" by itself in the 1989 version of § 2S1.1(b)(1) rendered it inapplicable to convictions under the new § 1956(a)(3), *i.e.,* convictions when the defendant merely believed (because of representations by government sting agents) that the funds were the proceeds of specified unlawful activity. Second, the addition of "or believed" was necessary for the guideline to apply to sting convictions for money laundering. In sum, a clear distinction has been made between "knew" and "believed" in the development of this guideline.

 We, therefore, follow *Breque.* For sentencing purposes under § 2S1.1(b)(1) (1989), Barton could not have known the money was from drug activity; he could only have believed that. *See Breque,* 964 F.2d at 389. Accordingly, the district court erred in increasing Barton's base offense level under § 2S1.1(b)(1) (1989), and he must be resentenced without that enhancement.[5]

V.

Barton's conviction is affirmed.[6] However, Barton's sentence is vacated, and the case is remanded for resentencing consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING.*

---

5. Our holding in this part (IV) is restricted to an interpretation of the word "knew" in U.S.S.G. § 2S1.1(b)(1) (1989) only. Moreover, our holding is not meant to limit or discredit any decision which holds that the knowledge element in a criminal statute may be satisfied by establishing subjective (actual) belief. *E.g., United States v. Fletcher,* 945 F.2d 725, 727 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1230, 117

L.Ed.2d 465 (1992); *United States v. Everett,* 700 F.2d 900, 908–09 (3rd Cir.1983).

6. We have reviewed the record and we are satisfied (1) that Barton's guilty plea was counselled and voluntary, and (2) that the district court did not err in refusing to allow Barton to withdraw his plea after sentencing.