**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                    No. 97-4487

MARK ANTHONY ROBERTS,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, District Judge.
(CR-96-68)

Submitted: November 17, 1998

Decided: December 7, 1998

Before MURNAGHAN and HAMILTON, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Anthony J. Vegh, Cleveland, Ohio, for Appellant. J. Rene Josey,
United States Attorney, Matthew R. Hubbell, Assistant United States
Attorney, Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Mark Anthony Roberts appeals his jury conviction and sentence on one count each of conspiracy to distribute cocaine and cocaine base (count one) and conspiracy to launder money (count nine), in violation of 21 U.S.C. § 841(a) (1994), 21 U.S.C.A.§ 846 (West Supp. 1998), 18 U.S.C.A. § 1956(h) (West Supp. 1998), and four counts each of money laundering and aiding and abetting (counts thirteen, fourteen, fifteen and sixteen), in violation of 18 U.S.C.A. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i) (West Supp. 1998), 18 U.S.C. § 2 (1994). The district court sentenced Roberts to a term of life imprisonment on count one, and to a term of imprisonment of 240 months on each of the remaining counts, with those terms to run concurrently. In addition, the district court sentenced Roberts to a supervised release term of five years on count one and three years on each remaining count, to run concurrently, and further ordered payment of a $300 special assessment. Roberts' sentence was based on a total offense level of forty-three and a criminal history category of I.

Roberts noted a timely appeal, claiming that: (1) the prosecutor committed misconduct warranting reversal by asking Roberts, on cross-examination, how much he paid for his retained attorney; (2) the district court clearly erred in ordering an eight-point enhancement of Roberts' criminal history category pursuant to the U. S. Sentencing Guidelines Manual § 3B1.1 (1996); (3) the district court clearly erred in determining the amount of crack cocaine attributable to Roberts; (4) the district court clearly erred in its calculation of the "value of funds" laundered pursuant to USSG § 2S1.1; (5) the district court erred by failing to make factual findings necessary to enhance Roberts' sentence for obstruction of justice for committing perjury while testifying in his own defense; and (6) the district court committed plain error in the Allen[1] charge it gave the dead-locked jury. For the reasons stated below, we affirm Roberts' conviction and sentence.

Roberts' first claim is that the district court erred in denying his

_____

**1** **See Allen v. United States**, 164 U.S. 492 (1896).

2

motion for a mistrial on the ground that the prosecutor committed misconduct warranting a new trial by asking him how much he paid for his retained attorney. This claim must be construed in light of the fact that Roberts' primary defense was that he was too poor to have been involved in the drug distribution and money laundering organization as alleged by the government. To the extent the prosecutor's inquiry surpassed that necessary as a relevant inquiry regarding Roberts' unexplained wealth, we find that Roberts has not established that the question prejudicially affected his substantial rights so as to deprive him of a fair trial. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). There was a plethora of evidence proving his involvement in the crimes charged,[2] and the district court disallowed the question and gave a curative instruction to the jury. Therefore, we can "say with fair assurance, after pondering all that happened without stripping the [allegedly] erroneous action from the whole, that the judgment was not substantially swayed by the [claimed] error." United States v. Ince, 21 F.3d 576, 583 (4th Cir. 1994) (internal quotation marks omitted).

Roberts also claims that the sentencing court's eight-point enhancement of his base offense level, pursuant to USSG§ 3B1.1(a), for his leadership role in the offenses charged in counts one and nine (four points each), was clearly erroneous.[3] We have upheld § 3B1.1 enhancements where the defendant exercised some element of control over the commission of the offense, see, e.g. , United States v. Kincaid, 964 F.2d 325, 329 (4th Cir. 1992), and specifically where the defendant was a major supplier of drugs for distribution and redistri-

_____

[2] The government presented the testimony of several of the principals in the drug conspiracy, who testified at length from their personal knowledge of Roberts' involvement as a leader and organizer of the drug conspiracy, and introduced several highly incriminating tape recordings of Roberts discussing drugs and/or drug money with principals in the conspiracy.

[3] We note that while mentioning the district court's four-point enhancement on the count nine conviction in his claim on appeal, Roberts offered no specific argument in support of any contention of clear error as to the count nine enhancement in either his initial or reply briefs on appeal. To the extent Roberts raised a claim of error as to the four-point enhancement as to count nine, our review of the record reveals no clear error.

bution by and to other members of the conspiracy. See, e.g., United States v. Banks, 10 F.3d 1044, 1057 (4th Cir. 1993).

The trial evidence in this case as to the drug distribution count (count one) demonstrated, and the district court found, ample evidence showing that Roberts "set up, trained and directed others" in the distribution of cocaine. Bobby Gadsden, a co-conspirator, specifically named Roberts as the "boss" of the organization. Gadsden attested that he worked directly for Roberts, and took instruction and direction from Roberts regarding the receipt of the powder cocaine, the cooking of the powder cocaine into crack, how to secrete the drug money in the wheel well of a Corsica automobile, and the distribution and redistribution of the cocaine to and from other members of the conspiracy, including Brandon Whittle, Kevin Coad, Angela McFadden, Alfredo Gadsden (Bobby's brother), and others. There was testimony from two co-conspirators that Roberts himself cooked the first kilogram shipment of powder cocaine into crack before it was delivered to Gadsden for distribution, and further testimony that Roberts recruited Whittle as a courier and initially supplied him with over a kilogram of crack in New York, which Whittle then delivered to Gadsden for sale in South Carolina. Whittle testified that he was the middle-man between Roberts, who supplied all the cocaine and Gadsden, who distributed the cocaine. According to Gadsden, it was routine that Roberts and/or Garfield Williams delivered crack to him every week or two in amounts ranging from twelve to fifteen ounces, and that Gadsden sold two to three kilograms of crack per month for five or six months. Several witnesses testified that Roberts was the supplier of the cocaine shipped from New York and the recipient of the drug proceeds. Williams testified that Roberts controlled the money involved in the conspiracy, and that while Williams recruited Coad into the conspiracy, he did so only after obtaining Roberts' authorization. In addition, McFadden testified that Roberts approached her about going to Jamaica to pick up drugs for him.

We find this evidence ample to support the conclusion that Roberts exercised a great deal of control over the conspiracy to distribute cocaine and cocaine base, see Kincaid, 964 F.2d at 329, and that he was a major supplier of cocaine for distribution and redistribution to other members of the conspiracy. See Banks, 10 F.3d at 1057. Accordingly, we find no clear error in the district court's factual

4

determination that Roberts was a leader in the cocaine conspiracy warranting a four-point enhancement of Roberts' base offense level on count one.

Roberts next claims that the district court erred in determining the amount of drugs involved in the offense. This court reviews questions involving legal interpretations of the guidelines de novo, see United States v. Wessells, 936 F.2d 165, 168 (4th Cir. 1991), and factual determinations underlying application of the guidelines for clear error. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). In determining the quantity of drugs attributable to a defendant convicted on a drug conspiracy charge, a defendant is responsible for all reasonably foreseeable drug distribution taken by others in furtherance of the conspiracy, and the government need only prove the quantities by a preponderance of the evidence. See United States v. Ellis, 975 F.2d 1061, 1067 (4th Cir. 1992) (citing USSG§ 1B1.3).

The sentencing court determined that Roberts was responsible for twelve kilograms of crack cocaine.[4] This finding was based upon trial evidence of one kilogram of cocaine which Roberts delivered to Bobby Gadsden, seven kilograms based on seven trips made by Whittle transporting one kilogram on each trip from New York to South Carolina, two kilograms based on trips made by Coad from New York to South Carolina, and two kilograms based on a trip made by McFadden and Alfredo Gadsden,[5] together with Bobby Gadsden's testimony that the powder cocaine was cooked into crack when sold by the organization. In addition, Gadsden testified that, in total, he sold two to three kilograms of crack cocaine per month for five to six months, which amounts to ten to eighteen kilograms.

On appeal, Roberts specifically objects to being sentenced on the basis of crack, rather than powder, cocaine, claiming that there were

_____

[4] The government correctly notes that pursuant to USSG § 2D1.1(c)(1), the district court only needed to find Roberts accountable for one and a half kilograms of crack cocaine to support a base offense level of thirty-eight, which is the base offense level attributed to Roberts on the distribution charge.

[5] One kilogram of this cocaine was seized by authorities prior to delivery to Gadsden.

5

no specific agreements involving Roberts that the powder would be cooked into crack for resale, and that it was not reasonably foreseeable to Roberts that Gadsden would cook all the powder into crack. However, there was substantial evidence at trial to support the sentencing court's determination that Roberts directly knew much of the powder was being cooked prior to resale, and that it was reasonably foreseeable that the rest of the powder was converted into crack prior to further distribution by the conspiracy. For example, Gadsden testified that Roberts specifically instructed him on how to cook powder cocaine into crack. Gadsden also attested that he told Roberts, when they first formed the conspiracy, that he could move up to a kilogram of crack and "build it up" as it went along. In addition, there was testimony from two co-conspirators that Roberts himself cooked the first kilogram shipment of powder cocaine into crack before it was delivered to Gadsden for distribution, and that Roberts initially supplied Whittle with over a kilogram of crack in New York, which Whittle then delivered to Gadsden for sale in South Carolina. According to Gadsden, it was routine that Roberts and/or Williams delivered crack to him every week or two, and that Gadsden sold two to three kilograms of crack per month for five to six months on behalf of Roberts. Finally, both Gadsden and Williams stipulated in their plea agreements that each of them were accountable for ten kilograms of crack cocaine due to their involvement in the conspiracy.

Based on the evidence before the sentencing court, we find that the court's finding that twelve kilograms of crack cocaine were attributable to Roberts was not clearly erroneous. See Daughtrey, 874 F.2d at 217. Hence, the district court properly considered that amount in sentencing Roberts.

Roberts' fourth claim is that the district court erred in finding that Roberts laundered at least $200,000, and thus enhanced his base offense level by two points, pursuant to USSG § 2S1.1. We will affirm the district court's calculations under USSG§ 2S1.1 unless clearly erroneous. See United States v. Barton , 32 F.3d 61, 65 (4th Cir. 1994). To determine the monetary cost of the crack, the district court relied upon statements given by Gadsden to authorities that he sent an average of $20,000 per kilogram to Roberts after everyone else had received their cut. Roberts does not challenge the monetary amount per kilogram; rather, he disputes the number of kilograms

6

involved, essentially repeating his argument made relative to the previous claim, that he should have been held accountable for less than ten kilograms of cocaine. He asserts that he should be assessed only for funds laundered on the basis of between $100,000 to $200,000, with a related one-point enhancement.

As we held above, the district court's determination that Roberts was accountable for twelve kilograms of cocaine base was not clearly erroneous. Therefore, we find that the district court's usage of that same twelve kilograms of cocaine base for purposes of calculating the amount of money laundered relative to the sale of that cocaine likewise was proper.

Roberts next contends that the district court erred by failing to make factual findings necessary to enhance his sentence, pursuant to USSG § 3C1.1, for committing perjury while testifying in his own defense, and that the obstruction enhancement violated his constitutional right to testify in his own defense. The district court's determination that Roberts committed perjury is a factual determination reviewable for clear error. See United States v. Murray, 65 F.3d 1161, 1165 (4th Cir. 1995).

Our review of the record reveals that the prosecutor identified nine specific examples of perjurious statements made by Roberts in the course of his trial testimony, including his denial that he was the supplier for the organization and his denial that he was at all involved with drugs, contrary to the weight of the other evidence, including testimony from a number of other co-conspirators and tape recorded conversations. After the government cited the various examples of perjured testimony, the district court adopted the government's recitation, stating that the instances of perjury enumerated by the government were accurate, that the court had reviewed the taped conversations and transcripts, that the court was left with no question that Roberts had perjured himself in that his testimony was "clearly contradicted" by the evidence, and that Roberts knew that it was. In addition, the district court noted that the jury likely was influenced by Roberts' false testimony. We find that the district court's statements regarding Roberts' perjurious testimony were sufficient to support findings of materiality, falsity of testimony, and willfulness to deceive as required under United States v. Dunnigan, 507 U.S. 87, 94-95

(1993), and United States v. Smith, 62 F.3d 641, 646-47 (4th Cir. 1995). Moreover, because a defendant's right to testify does not include the right to commit perjury, see Dunnigan, 507 U.S. at 96, the district court's enhancement of Roberts' sentence did not violate his constitutional right to testify at trial.

Roberts' final claim concerns the Allen charge which the district court gave to the jury following a deadlock. Without objecting to any particular aspect of the Allen charge given, Roberts claims generally that the charge coerced the minority of the jurors. As Roberts failed to raise this claim in the district court, we review it on appeal for plain error. See United States v. Burgos, 55 F.3d 933, 938 n.4 (4th Cir. 1995); United States v. Russell, 971 F.2d 1098, 1107 (4th Cir. 1992).

A review of the trial transcript reveals that the charge was balanced, in that it encouraged both the majority and the minority to listen to each other's views. It emphasized that each juror should decide the case for themselves only after an impartial consideration of the evidence with fellow jurors. The district court specifically warned jurors that they should not surrender their honest conviction as to the weight or effect of the evidence solely because of the opinion of other jurors or just to reach a verdict. The district judge then reminded the jurors that it was their duty to consult with other jurors and to deliberate with a view to reaching an agreement if it could be done without violence to their individual judgment. Moreover, Roberts' counsel expressed satisfaction with the Allen charge both before and after it was given. We specifically find that the Allen charge was fair, neutral, and balanced, and that it was in accordance with the standards established by this court. See Burgos, 55 F.3d at 935-41.

Accordingly, we affirm Roberts' conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

8