**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.                                                    No. 00-4594

DARRELL DAVID RICE,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CR-97-43)

Submitted: January 26, 2001

Decided: February 8, 2001

Before NIEMEYER and LUTTIG, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

Michael W. Lieberman, Alexandria, Virginia; J. Frederick Sinclair, J. FREDERICK SINCLAIR, P.C., Alexandria, Virginia, for Appellant. Robert P. Crouch, Jr., United States Attorney, Jean B. Hudson, Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Darrell David Rice appeals the 135-month sentence he received after he pled guilty to attempted kidnapping in violation of 18 U.S.C.A. § 1201(a), (d) (West 2000). He alleges that the district court erred in making a cross reference from *U.S. Sentencing Guidelines Manual* § 2A4.1(b)(7) (1998) (Kidnapping) to USSG § 2A3.1 (Criminal Sexual Abuse), and in refusing him a three-level reduction under USSG § 2X1.1(b)(1). Rice further claims that the court clearly erred in finding that he used his truck as a dangerous weapon during the commission of the attempted kidnapping, USSG § 2A3.1(b)(1), and abused its discretion in departing upward by two levels for more than minimal planning, USSG § 5K2.0, p.s. We affirm.

On July 9, 1997, Rice drove his pickup truck from his home in Maryland to the Shenandoah National Park in Virginia. In the park, Rice passed Yvonne Malbasha, who was cycling alone. Before approaching her, Rice stopped his truck and removed his license plates. He then drove back to Malbasha, who had just turned onto the access road for a rest area. Rice drove past Malbasha so closely that he forced her off the road and off her bike. According to Malbasha, Rice got out of the truck and came toward her, screaming that he was going to get her and telling her to get in the truck. Unable to flee because she was wearing cycling cleats, Malbasha placed her bicycle between herself and Rice. He grabbed at her clothing and told her to show him her "titties." Malbasha hit Rice with her water bottle. After continuing to shout at Malbasha and trying to pull the bicycle away from her, Rice suddenly turned away and got back into his truck. He drove a short distance down the road, then turned around, gunned his engine, and drove directly at Malbasha, who climbed over a fallen tree for protection. When Rice backed up and drove away, she climbed back over the tree, anxious to return to the main road. However, Rice returned immediately and drove at her again, forcing her

to scramble behind the tree again. Malbasha testified at Rice's sentencing hearing that this happened four or five times before Rice finally left. On one of his passes, Rice again repeated his demand that Malbasha get in the truck.

Rice finally left. A park ranger arrived shortly afterward. Malbasha was agitated but unhurt except for an abrasion on her back, which she later said she thought Rice had caused when he grabbed her. Rice was apprehended and identified by Malbasha as her attacker. By then, he had changed his shirt and put the license plates back on his truck. Park rangers found plastic flex-cuffs used in law enforcement (also used as utility ties by electricians) and a ten-foot length of nylon rope in Rice's truck.[1]

In interviews with park rangers, an agent of the Federal Bureau of Investigation, and a National Park Service investigator, Rice said that, when he saw Malbasha cycling, he decided to agitate her and ruin her day. He admitted removing his license plates to avoid getting caught and said he threw a soda can which hit her in the back as he forced her off the road. He admitted yelling at her to "come here" and telling her to "show me your tits" and "get in the truck," and said he might have taken hold of her briefly. He admitted feeling "aggressive toward her sexually," as he got out of his truck, and that "if she didn't scream for help it would have gone further . . . forcibly take her clothes off." However, he repeatedly denied any intent to rape her or have sex with her, saying that he only wanted to "aggravate her."

Rice said he had been in the park the week before and had thrown a rock through the windshield of a parked car. Further, Rice stated that he had "yelled at and confronted a female bicyclist vehemently about a year ago in Maryland," and that he chose to confront females because they were more vulnerable than men.

---

[1]Rice was not an electrician; he had worked most recently as a computer programmer. Investigators discovered that Rice had replaced the original cab of the truck, a 1989 Chevrolet S-10, with a 1988 cab of the same make with his ex-brother-in-law's help, ostensibly because the truck had been in an accident.

In sentencing Rice, the district court began with USSG § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint), but used a cross reference in subsection (b)(7) to apply USSG § 2A3.1 (Criminal Sexual Abuse, Attempts). The resulting base offense level was 27. The district court added a four-level enhancement for commission of the offense by the use of a dangerous weapon (Rice's truck). The court decided against making another four-level enhancement under § 2A3.1(b)(5), which applies if the victim was abducted, because "abducted," as used in the guidelines, means that the victim was forced to accompany an offender to a different location. USSG § 1B1.1, comment. (n.1(a)). The court subtracted three levels for acceptance of responsibility, as provided in the plea agreement, but departed upward two levels under USSG § 5K2.0 for more than minimal planning. The final offense level was 30. Rice was in criminal history category II, making his guideline range 108-135 months. The court imposed a sentence of 135 months.

On appeal, Rice first argues that the district court erred in applying the cross reference in § 2A4.1(b)(7) to the guideline for attempted criminal sexual abuse, § 2A3.1. The district court's determination as to which guideline applies is reviewed de novo. *United States v. Davis*, 202 F.3d 212, 218 (4th Cir.), *cert. denied*, 120 S. Ct. 2675 (2000). Rice contends that subsection (b)(7) applies only when the victim was actually kidnapped, abducted, or unlawfully restrained. He points out that the district court found that Malbasha was not abducted. However, Application Note 5 to § 2A4.1 states that the court must apply any adjustment that can be determined with reasonable certainty. Because Rice pled guilty to attempted kidnapping, the district court was forced to consider Rice's motive in attempting to kidnap Malbasha. If the court could discern with reasonable certainty that Rice's intent was to sexually molest Malbasha, it was required to apply § 2A3.1.

Rice contends that the Sentencing Commission did not intend the cross reference to be applied in a sexual abuse case because § 2A4.1(b)(5) provides an enhancement for sexual exploitation of a kidnapping victim. However, subsection (b)(7) states that the cross reference is to be applied if it would result in a higher offense level than that determined under § 2A4.1, which was the case here.

Rice argues that, even if the cross reference was permissible, it was unsupported by the evidence. He suggests that only evidence of an attempt to commit rape, that is, proof of intent to rape and a substantial step toward accomplishing a rape, would have justified application of the cross reference. This argument again overlooks Application Note 5, which provides for application of the cross reference where the offense is an attempted kidnapping if the purpose for the kidnapping "can be determined with reasonable certainty." Such a determination is necessarily a factual finding, which is reviewed for clear error. *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir. 1989). The evidence showed that Rice tried to force Malbasha into his truck while telling her that he was going to "get" her and telling her to expose her breasts. He later admitted that, had she not resisted, he might have forcibly removed her clothes. While he also repeatedly denied that he had any intention of sexually molesting Malbasha, the district court's decision that he did have that intention, based on Rice's conduct, was not clearly erroneous. Therefore, the court's application of the cross reference to § 2A3.1 was not error.

Next, Rice argues that he was entitled to a reduction under § 2X1.1(b)(1), and that the evidence did not support the district court's conclusion that Malbasha prevented him from completing the offense. The offense level for an attempt crime is the base offense level from the guideline for the substantive offense, together with enhancements and reductions "for any intended conduct that can be established with reasonable certainty." USSG § 2X1.1. Subsection (b)(1) provides for a decrease of three levels "unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." The background commentary notes that, in most prosecutions for attempts, the substantive offense was substantially completed "or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim." USSG § 2X1.1, comment. (backg'd).

The district court's decision that Rice's offense was not completed because of his victim's resistance, not because he withdrew of his own volition, is a factual finding that is reviewed for clear error.

*United States v. Barton*, 32 F.3d 61, 64 (4th Cir. 1994). We cannot say that the district court clearly erred. Rice selected a victim, accosted her, and tried to force her into his truck.[2] His case is thus distinguishable from *United States v. Depew*, 932 F.2d 324 (4th Cir. 1991), on which he relies. In that case, the defendant was arrested before he took any concrete action toward completing the intended offenses. Moreover, Rice's conduct after he ceased trying to pull Malbasha into the truck—driving at her several times in an apparent effort trying to kill her or scare her enough that she would obey his renewed command to get in the truck—indicates that he did not have a change of heart, but was simply frustrated in his effort to kidnap her.

Rice also contests the enhancement for use of his truck as a dangerous weapon. USSG § 2A3.1(b)(1). The enhancement is required if the offense was committed through "the use or display of any dangerous weapon" or by other means set out in 18 U.S.C.A. § 2241(a), (b) (West Supp. 2000), that is, by force or threat. Rice concedes that a truck could be a dangerous weapon, but argues that "use" means more than "brandishing, displaying, or possessing" and that he did no more than "brandish" his truck. *See* USSG § 1B1.1, comment. (n.1(g)) (defining "otherwise used" with respect to a dangerous weapon). This argument fails. Rice used the truck to force Malbasha off her bicycle, which both intimidated her and created an opportunity for Rice to try to get her into his truck. He used the truck again as a dangerous weapon in an apparent attempt to run over her or to intimidate her into complying with his repeated demand that she get in the truck.

Finally, Rice challenges the upward departure for more than minimal planning as an abuse of discretion. *See Koon v. United States*,

---

[2]The government contends that Rice completed an abduction, thus making him ineligible for a reduction under § 2X1.1. The government relies on the fact that Rice confined Malbasha behind the tree for a time, thus unlawfully restraining her. It suggests that the district court denied the reduction because it found that a completed abduction had occurred, as well as because Rice was prevented from completing the offense. In fact, the district court's finding that an abduction occurred concerned only the recommended enhancement under § 2A3.1(b)(5). The district court later reversed its initial finding that an abduction (as defined in § 1B1.1) had occurred.

518 U.S. 81, 96-100 (1996) (providing standard of review). While some guidelines provide for an enhancement for more than minimal planning, neither § 2A3.1 nor § 2A4.1 does so. A factor listed as a specific offense characteristic under one or more guidelines but not under the guideline applicable to the instant offense may be a basis for departure if it is relevant to the instant offense. USSG § 5K2.0. The guidelines do not encourage, discourage, or forbid a departure for more than minimal planning. Under *Koon*, 518 U.S. at 96, a sentencing court may depart for an unmentioned factor if, "after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,'" it decides that the factor "is sufficient to take the case out of the Guideline's heartland."

Rice contends that his planning involved nothing more than "simple basic steps to avoid detection." He notes that departures for factors not mentioned in the guidelines are expected to be "highly infrequent." *Id.* (citing USSG ch. 1, pt. A, p. 6).

"More than minimal planning" is an aggravating factor defined in Application Note 1(f) to § 1B1.1 as "more planning than is typical for commission of the offense in a simple form," such as taking steps to conceal the offense. The commentary also explains that "[i]n an assault, . . . waiting to commit the offense when no witnesses were present would not alone constitute more than minimal planning. By contrast, luring the victim to a specific location, or wearing a ski mask to prevent identification, would constitute more than minimal planning." USSG § 1B1.1, comment. (n.1(f)).

Here, the district court found that Rice's offense involved more planning than occurs in a typical abduction[3] in that he had flex-cuffs in the cab of the truck, brought a change of clothes with him, and stopped to remove his license plates before the attack to make detection more difficult. This conduct qualifies as more than minimal planning for an assault under the commentary to § 1B1.1. The district

---

[3]The background commentary to § 2A4.1 states that kidnapping cases generally fall into three categories: (1) limited duration kidnapping where the victim is released unharmed, (2) kidnapping to facilitate another offense, often a sexual assault, and (3) kidnapping for ransom or a political purpose.

court's decision that this amount of planning removed Rice's case from the heartland of the kidnapping guideline is reviewed de novo. *United States v. Rybicki*, 96 F.3d 754, 758 (4th Cir. 1996). Rice had provided himself with a means of immobilizing his victim and taken steps to escape detection. Rice's planning for his confrontation with Malbasha is significant when considered in light of his admission of past angry confrontations with females who were strangers to him, and his demeanor in this offense, which caused Malbasha to fear that she would be raped and killed if she got in his truck. Therefore, we find that the district court did not err in finding that Rice's planning took his case out of the heartland of kidnapping cases. We further find that the district court did not abuse its discretion in deciding that a departure was justified, *see id.*, and in departing upward by two levels. *Id.*

We therefore affirm the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*