# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 01-50909
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRANDON KERESZTURY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas —— Austin Division

_____

June 5, 2002

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

WIENER, Circuit Judge.

Defendant-Appellant Brandon Keresztury appeals his 70-month prison sentence for violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), which together criminalize possession, with intent to distribute, of 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD). We conclude that Keresztury is entitled to bring this appeal and, further, that the sentencing court erred when, in determining Keresztury's base offense level under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), it used the weight of the entire liquid medium with which the LSD was mixed. We vacate the

70-month prison sentence, and remand the case for resentencing.

## I. Facts and Proceedings

In February 2001, an undercover officer with the Texas Department of Public Safety ("DPS") accompanied an informant to Austin, Texas, where the informant phoned Keresztury and asked to buy some LSD. When Keresztury obtained the LSD from his source, the undercover officer went to Keresztury's apartment and bought the LSD for $2,000. The substance that Keresztury sold was a mixture of liquid LSD and vodka in a single bottle. Together, the LSD and the vodka weighed 18.53 grams.

Keresztury was charged in an Information with violation of 21 U.S.C. §§ 841(a)(1)[1] and 841(b)(1)(A).[2] He entered into a plea

---

[1] Section 841(a)(1) provides, in relevant part:

**(a) Unlawful acts.** Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally —
...
    (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.
21 U.S.C. § 841(a).

[2] Section 841(b)(1)(A) provides, in relevant part:

**(b) Penalties.** Except as provided in section 409, 418, 419, or 420, any person who violates subsection (a) of this section shall be sentenced as follows:
    (1)(A) In the case of a violation of subsection (a) of this section involving —
    ...
        (v) 10 grams or more of a mixture or substance containing a detectable amount of [LSD]

    such person shall be sentenced to a term of imprisonment which may not be less than 10 years or

agreement with the government which contained the following relevant provisions:

> 1. The defendant has agreed to enter a plea of guilty to an Information which charges him with Possession with intent to distribute a controlled substance, to-wit: 10 grams or more of a mixture or substance containing a detectable amount of [LSD], in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A). <u>The defendant understands that due to the quantity of LSD, he faces a sentencing range of imprisonment which may not be less than 10 years or more than life</u> ....
> ...
>
> 3. The United States Attorney for the Western District of Texas has made no agreement with the defendant or his counsel concerning a specific sentence. <u>The United States has agreed, however, not to contest acceptance of responsibility for this defendant as long as he continues to truthfully acknowledge his guilt of this offense.</u> The United States of America specifically reserves its right to speak at sentencing under Rule 32(a)(1) of the Federal Rules of Criminal Procedure.
>
> 4. **DEFENDANT'S TRUTHFUL STATEMENT AND COOPERATION.** The defendant agrees to cooperate fully and truthfully with the government as follows:
> ...
>> k. Defendant agrees that if the defendant fails to provide full and truthful cooperation, <u>or has committed any federal, state or local crime between the date of this agreement and his sentencing, or has otherwise violated any other provision of this agreement, the agreement may be voided by the government</u> and the defendant shall be subject to prosecution for any federal crime which the government has knowledge [sic] including, but not limited to, perjury, obstruction of justice, and the substantive offenses arising from this investigation....
>
> ...
> 6. **WAIVER OF APPEAL:** Defendant is aware that his sentence will be imposed in conformity with the <u>Federal</u>

---

more than life....
21 U.S.C. § 841(b)(1)(A).

3

> Sentencing Guidelines and Policy Statements. The defendant is also aware that a sentence imposed under the Guidelines does not provide for parole. Knowing these facts, defendant agrees that this Court has jurisdiction and authority to impose any sentence within the statutory maximum set for his offense, including a sentence determined by reference to the Guidelines, and he expressly waives the right to appeal his sentence on any ground, including any right to appeal conferred by 18 U.S.C. § 3472. However, should the court depart upwards from its guideline calculation, then in that event, the Defendant could appeal the justification for and imposition of such an upward departure, but no other issue as relates to the Sentencing Guidelines.
> (Emphasis added.)

When Keresztury appeared before the magistrate judge to be re-arraigned and plead guilty, the magistrate judge reviewed the plea agreement with Keresztury, particularly the waiver of appeal:

> THE COURT: Let me cover one aspect of that plea agreement that I'm required to cover by rule, and that is the waiver of your rights to appeal. By this agreement you have given up your right to appeal the conviction that will fall from your guilty plea or the sentence that will fall except in some very narrow circumstances; specifically, if the district court were to sentence you above the sentencing guideline range for this offense, then you have got a right to appeal. You preserved that right by your agreement. That sort of sentence —— second, if your lawyer was ineffective in assisting you or the government's lawyer engaged in misconduct to a constitutional degree, that is that conduct would have to materially affect you in a negative way in this case, then you have retained your right to appeal that issue and raise that issue on appeal or to attack your conviction or sentence because of that. But other than those circumstances that I have just described, you have given up any other rights to appeal. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
> (Emphasis added.)

The magistrate judge also reviewed with Keresztury the statutory minimum and maximum prison sentence (10 years to life) for the

4

offense, under 21 U.S.C. 841(b)(1)(A).

In his Presentence Investigation Report (PSI), the probation officer applied U.S.S.G. § 2D1.1 to determine that Keresztury's base offense level was 32.[3] As Keresztury met all the criteria set forth in U.S.S.G. § 5C1.2(a), however, the statutory minimum of 10 years' imprisonment did not apply,[4] and the PSI recommended reduction of Keresztury's offense level by two, to offense level 30. In addition, Keresztury was determined to have zero criminal history points, which established a criminal history category of I under the Guidelines. Based on the total offense level of 30 and the criminal history category of I, the U.S.S.G. range of imprisonment periods was 97-121 months.[5]

Keresztury filed objections to the PSI, contending that the probation officer used the wrong weight of LSD to calculate his base offense level, and that he warranted a further offense level decrease for acceptance of responsibility. The United States

---

[3] U.S.S.G. § 2D1.1(c)(4) [Drug Quantity Table] establishes that for offenses involving "[a]t least 10 G but less than 30 G of LSD," the base offense level is 32.

[4] U.S.S.G. § 5C1.2, entitled "Limitation on Applicability of Statutory Minimum Sentences in Certain Cases," provides that,
> [e]xcept as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841..., the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth verbatim below....

(Emphasis added.)

[5] See U.S.S.G. Sentencing Table.

5

probation officer defended his calculation of the base offense level, relying on U.S.S.G. § 2D1.1 Application Note 1,[6] and argued against a reduction for acceptance of responsibility, noting that Keresztury had tested positive for marijuana use on multiple occasions while out on bond and finally had his bond revoked when he tested positive for cocaine use. The government also responded to Keresztury's objection relating to an adjustment for acceptance of responsibility by stating:

> The United States agrees [with the recommendation of the probation officer] that the defendant should pay some price for his continued drug usage which clearly violated his bond conditions for a very serious offense. <u>His continued criminal conduct not only violated his promises to the Court, but also the assurances he provided in the plea agreement that he would commit no crimes between the date of the agreement and the date of his sentencing</u>. Obviously, in order to use controlled substances, Mr. Keresztury had to possess them, which is <u>a violation of both state and federal law</u>. To give him the same points off as other defendants who were completely clean while they were on bond does not seem fair or just. (Emphasis added.)

---

[6] <u>See</u> U.S.S.G.§ 2D1.1 app. n.1:
> "Mixture or substance" as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot be readily separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted....

(Emphasis added.)

6

At the sentencing hearing, Keresztury raised both objections again.  The judge overruled the objection relating to the proper weighing of the LSD, but granted Keresztury's motion regarding acceptance of responsibility and reduced his offense level an additional three levels, bringing it down to offense level 27.  The Guidelines' sentencing range for offense level 27 is 70-87 months.  The judge sentenced Keresztury at the bottom of the Guidelines range (70 months imprisonment), plus five years supervised release and a $100 special assessment.  Despite his plea agreement's waiver of appeal, Keresztury timely filed a notice of appeal.

## II. Analysis

### A. Standard of Review

There are two primary issues in the instant case: whether the plea agreement remains effective or has been voided by the government's conduct, and whether the Guidelines were properly applied.  We review both issues de novo.[7]

### B. Waiver of the Right to Appeal

Keresztury advances two reasons in support of his entitlement to bring this appeal despite the waiver of his right to appeal in the plea agreement.  He first contends that in the plea agreement

---

[7] See United States v. Ford, 996 F.2d 83, 85 (5th Cir. 1993) ("Interpretation of the guidelines is a question of law, subject to de novo review."); United States v. Valencia, 985 F.2d 758, 760 (5th Cir. 1993) (internal citations omitted) ("Whether the government's conduct violates the terms of the plea agreement is a question of law.  A breach of a plea agreement constitutes plain error and our review is de novo.").

7

(and as emphasized by the magistrate judge at rearraignment) he expressly reserved the right to appeal any sentence that exceeded the sentencing guideline range for his offense, and, he maintains, the imposition of a sentence predicated on a base level offense of 32 fits within this category of allowed appeals. He argues second, and in the alternative, that when it contested the downward departure for acceptance of responsibility, the government breached the plea agreement or elected to void it, thereby releasing both the government and Keresztury from all strictures of the agreement, including Keresztury's waiver of his right to appeal. As we conclude that his argument in the alternative has merit, we examine his primary argument no further.

Again, the plea agreement provides that "[t]he United States has agreed ... not to contest acceptance of responsibility for this defendant as long as he continues to truthfully acknowledge his guilt of this offense." When the probation officer recommended against granting Keresztury an offense level reduction for acceptance of responsibility, however, the government added its voice <u>in</u> <u>support</u> of the probation officer's conclusion. This action by the government, argues Keresztury, constituted either a breach of the plea agreement or an exercise by the government of its right to avoid it, pursuant to the terms of ¶ 4.k. of the plea agreement. In either case, Keresztury concludes, the plea agreement, including the waiver of his right to appeal, no longer stands, freeing him to bring this appeal of his sentence.

8

The government responds by insisting that it did not breach the plea agreement; yet it continues in it appellate brief:

> Although the Government agreed in the plea agreement that it would not contest acceptance of responsibility, this provision was conditioned on Appellant continuing to truthfully acknowledge his guilt of this offense. ... [W]hile it is true that the Government supported the probation officer's finding that Appellant did not warrant an adjustment for acceptance of responsibility, the Government did so only as a result of Appellant's own conduct inconsistent with the terms of the plea agreement.
> In the plea agreement, Appellant agreed that if he, "committed any federal, state or local crime between the date of this agreement and his sentencing, or has otherwise violated any other provision of this agreement, the agreement may be voided by the government[.]" Appellant vitiated the plea agreement by his repeated use of marijuana and cocaine .... Further, after filing its response, the Government never articulated any opposition, at sentencing, to the adjustment for acceptance of responsibility. (Emphasis added.)

Although the government does not come right out and say so, it obviously exercised its option to void the plea agreement after Keresztury violated it.

Next, the government notes that the district court granted a 3-level reduction for acceptance of responsibility in the end —— "[t]hus," argues the government, "Appellant was not prejudiced by the Government's response to his Objections to the PSR." Last, the government asserts that "even if this Court finds that the Government did breach the agreement, a breach does not automatically require resentencing."

Addressing the last of the government's arguments first, we note that it misses the point. When we scrutinize the government's

9

conduct to determine whether it manifested an exercise of its prerogative to void the plea agreement, our objective is to discover whether the defendant's waiver of his right to appeal remains effective, not whether resentencing is required. And, when we conclude, as we do, that the government opted to void the plea agreement (including the defendant's waiver of appeal), we are free to consider the substance of the defendant's appeal. It is the result of this consideration that may require resentencing.

Next, by emphasizing that "Appellant was not prejudiced by the Government's response to his Objections to the PSR," because the district court disregarded the probation officer and the prosecution and granted the decrease for acceptance of responsibility anyway, the government appears to be proposing some kind of harmless error excuse. As we have stated before when rejecting the government's harmless error analysis, however,

> The interest of justice and standards of good faith in negotiating plea bargains require reversal where a plea bargain is breached. A lesser standard would permit the government to make a plea bargain attractive to a defendant, subsequently violate the agreement and then argue harmless error, thereby defrauding the defendant.[8]

We therefore reject this attempt by the government to excuse its action as harmless.

We are left, then, with the government's bald assertion that it simply did not breach the agreement. The government is not

---

[8] Valencia, 985 F.2d at 761 (internal citation omitted) (emphasis added).

10

persuasive on this point. The best that the government can offer by way of justification is that it was Keresztury who first "vitiated the plea agreement" by violating state and federal law through possession of drugs, and that the government responded as it did "only as a result of Appellant's own conduct inconsistent with the terms of the plea agreement." If that is not an acknowledgment that the government was exercising its prerogative to void the plea agreement should Keresztury fail to comply with its terms, we cannot imagine what is. And, as Keresztury states in his appellate brief,

> Declaring the agreement to be void may avoid any question of breach on the part of the Government, but <u>if the agreement is void, no part of it — including any waiver of the right to appeal — is enforceable</u>. ... <u>The Government cannot pick and choose which parts of the plea agreement it wants to apply</u>. Once it takes advantage of paragraph 4k and considers the agreement to be void to justify its position on the acceptance of responsibility issue, then <u>the provision of the agreement supposedly waiving the right to appeal the sentence is likewise void and unenforceable</u>. (Emphasis added.)

We agree with Keresztury. As we have stated before, "[i]n determining whether the terms of a plea agreement have been violated, the court must determine whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement."[9] It is certainly inconsistent with a defendant's reasonable understanding of a promise <u>not</u> to contest a reduction for acceptance of responsibility for the government to add its

---

[9] <u>Valencia</u>, 985 F.2d at 761 (citing <u>United States v. Huddleston</u>, 929 F.2s 1030, 1032 (5th Cir. 1991)).

11

voice _in_ _support_ of the PSI recommendation that the defendant receive _no_ such reduction. Whether the government's conduct is viewed as the initial breach of the plea agreement or the exercise of its prerogative to void the plea agreement when Keresztury breached it first, the result is the same: The agreement, including the restriction on Keresztury's right to appeal, is void. He can therefore appeal his sentence, which he has done, and we can consider his appeal.

C. Application of the Guidelines

Keresztury contends that the sentencing court erred when it used the entire weight of the LSD/vodka solution in determining his base offense level of 32. Instead, he maintains, Application Note 15 from U.S.S.G. § 2D1.1 ("Application Note 15") should govern. Application Note 15 provides:

> LSD on a blotter paper carrier medium typically is marked so that the number of doses ("hits") per sheet readily can be determined. When this is not the case, it is to be presumed that each 1/4 inch by 1/4 inch section of the blotter paper is equal to one dose.
>
> In the case of liquid LSD (LSD that has not been placed on a carrier medium), using the weight of the LSD alone to calculate the offense level may not adequately reflect the seriousness of the offense. In such a case, an upward departure may be warranted.[10]

Liquid LSD was involved in the instant case, and, according to Keresztury, the words, "weight of the LSD alone" in Application Note 15 indicate that a proper application of the Guidelines

---

[10] U.S.S.G. § 2D1.1, cmt. app. n.15 (emphasis added).

12

requires a calculation of the weight of the actual LSD, separate from the liquid with which it is combined.  Keresztury defends this interpretation by noting that the Guidelines acknowledge that different carrier media have different weights, and that, to avoid severe disparity in sentencing for essentially identical crimes (i.e., possession of comparable amounts of actual LSD), the Guidelines establish a presumptive weight per dose of 0.4 milligrams for LSD on a carrier medium.[11]  Keresztury argues that allowing the weight of the liquid into which the LSD is mixed to determine the proper offense level under the Guidelines contravenes a primary purpose of the Guidelines, i.e., to establish some uniformity for sentencing.  As Keresztury points out, this is best demonstrated by the realization that if the weight of the entire mixture is used, a more dilute LSD solution —— using more liquid per dose —— would result in a more severe penalty under the Guidelines.

---

[11] See U.S.S.G. § 2D1.1 cmt. background:

> Because the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself, the Commission has determined that basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD (but different carrier weights), as well as sentences disproportionate to those for other, more dangerous controlled substances, such as PCP.  Consequently, in cases involving LSD contained in a carrier medium, the Commission has established a weight per dose of 0.4 milligrams for purposes of determining the base offense level. (Emphasis added.)

13

As we have recently announced in <u>United States v. Morgan</u>,[12] we are in agreement with Keresztury's position here, and have joined other circuits in holding that "when the controlled substance is LSD contained in a liquid solution, the weight of the <u>pure LSD alone</u> should be used in determining the <u>base offense level under the Guidelines</u>."[13]   Neither the preparer of the PSI nor the sentencing court had the benefit of our <u>Morgan</u> opinion, so it is understandable that both included the vodka and established an offense level of 32 for Keresztury.   Still, <u>Morgan</u> controls, so inclusion of the weight of the vodka constitutes reversible error.

As noted above, the entire LSD/vodka mixture which Keresztury sold to the DPS officer weighed 18.53 grams.  The DPS lab report stated that there were 1248 "abuse units" of LSD in the mixture. Under Texas Health & Safety Code § 481.002(50)(B), an abuse unit of liquid LSD is assigned a weight of 0.04 milligrams.  Therefore, there were 0.04992 grams (49.92 milligrams) of LSD in the mixture. The Guidelines assign a presumptive weight of 0.05 milligrams per dose of "<u>actual LSD</u>,"[14] so, for U.S.S.G. purposes, there were 998.4

---

[12] No. 01-20500 (5th Cir. May 23, 2002).

[13] <u>Id.</u> (citing <u>United States v. Camacho</u>, 261 F.3d 1071, 1074-75 (11th Cir. 2001); <u>United States v. Sia</u>, No. 96-1808, 1996 WL 728191 (1st Cir.) (unpublished); <u>United States v. Ingram</u>, 67 F.3d 126, 128  (6th Cir. 1995); <u>United States v. Turner</u>, 59 F.3d 481, 485 (4th Cir. 1995); <u>United States v. Jordan</u>, 842 F.Supp. 1031, 1033 (M.D. Tenn. 1994)) (emphasis in original).

[14] <u>See, e.g.</u>, U.S.S.G. § 2D1.1 cmt. background ("The dosage weight of LSD [on a carrier medium] selected exceeds the Drug Enforcement Administration's standard dosage unit for LSD of 0.05

doses of LSD in the vodka.[15]

According to the U.S.S.G. Drug Quantity Table, 49.92 milligrams of LSD produces a base offense level of 12,[16] the sentencing range for which is 10-16 months if the defendant is in criminal history category I. Keresztury argues that his base offense level should be 12, and that he should still receive a 2-level decrease for acceptance of responsibility,[17] bringing his offense level to 10, with a sentencing range of 6-12 months for criminal history category I defendants.

Much as Keresztury would prefer this result, the Guidelines appear to preclude it. Section 5C1.2, Limitation on Applicability

---

milligram [sic] (i.e., the quantity of actual LSD per dose) in order to assign some weight to the carrier medium.").

[15] The Guidelines also provide that for LSD on a carrier medium, "each dose of LSD on the carrier medium [should be treated] as equal to 0.4 mg of LSD for the purposes of the Drug Quantity Table." U.S.S.G. § 2D1.1 Note (H) to Drug Quantity Table. Using the presumptive weight for LSD on a carrier medium, the 998.4 doses are assigned a weight of 399.36 milligrams. In Morgan, however, we determined that "the .4 milligram conversion factor used for LSD on a carrier medium is not used with liquid LSD."

[16] See U.S.S.G. § 2D1.1(c)(14) [Drug Quantity Table] (assigning an offense level of 12 for crimes involving "[l]ess than 50 MG of LSD").

[17] Because his postulational base offense level (12) prior to the reduction for acceptance of responsibility is less than 16, he may only receive a 2-level downward departure, unlike the situation at his initial sentencing, where his pre-reduction offense level of 30 —— coupled with the fact that he apparently met the criteria in U.S.S.G. § 3E1.1.(b)(1)-(2) —— entitled him to a 3-level reduction. See U.S.S.G. § 3E1.1, Acceptance of Responsibility.

of Statutory Minimum Sentences in Certain Cases, is the provision that the probation officer applied in the PSI to show that Keresztury was not subject to the 10-year statutory minimum for imprisonment.  That section states:

> Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841..., the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth verbatim below....[18]

Subsection (b), to which the above refers in the initial clause, provides:

> (b) In the case of a defendant (1) who meets the criteria set forth in subsection (a); and (2) for whom the statutorily required minimum sentences is at least five years, the offense level applicable from Chapters Two (Offense Conduct) and Three (Adjustments) shall not be less than level **17**.[19]

Keresztury was being sentenced for violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), i.e., for possession with intent to distribute 10 grams or more of a mixture or substance containing a detectable amount of [LSD].  Our conclusion, dictated by Morgan, that the weight of the "LSD alone" must be used in determining Keresztury's base offense level does not alter the fact that the weight of the mixture or substance containing a detectable amount of LSD in the instant case weighed more than 10 grams.  Therefore, the application of § 841(b)(1)(A) is still correct.  That section

---

[18] U.S.S.G. § 5C1.2(a) (emphasis added).

[19] U.S.S.G. § 5C1.2(b) (bold in original; emphasis added).

16

states:

> (1)(A) In the case of a violation of subsection (a) of this section involving ——
> ...
> (v) <u>10 grams or more</u> of a <u>mixture or substance containing a detectable amount of [LSD]</u>
>
> <u>such person shall be sentenced to a term of imprisonment which may not be less than 10 years</u> or more than life....[20]

Keresztury therefore falls within the category of defendants described in U.S.S.G. § 5C1.2(b), because he not only meets all the criteria in subsection (a), but is also a defendant "for whom the statutorily required minimum sentences is at least five years." Accordingly, the mandate of U.S.S.G. § 5C1.2(b) applies, and "the offense level applicable from Chapters Two (Offense Conduct) and Three (Adjustments) shall not be less than level 17." For a defendant with a criminal history category of I, the range of imprisonment periods for offense level 17 is 24-30 months.[21]

This discussion is not intended to suggest that other provisions in the Guidelines may or may not be applicable. We have undertaken this last analysis only to clarify that Keresztury is not entitled to a base offense level of 12, as he contends. Having

---

[20] 21 U.S.C. § 841(b)(1)(A) (emphasis added).

[21] <u>See</u> U.S.S.G. Sentencing Table. We also note, however, that although this is an offense level greater than 16, so Keresztury may be eligible for a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, <u>see</u> <u>supra</u> note 20, U.S.S.G. § 5C1.2 expressly forbids the application of Chapter Three (which includes § 3E1.1) to yield a result less than offense level 17.

explained that, together with our holding that the district court cannot use the weight of the liquid (vodka) with which the LSD is mixed to arrive at the base offense level, we leave the application of the pertinent Guidelines provisions to the district court at resentencing.

## III. Conclusion

Keresztury is entitled to bring the instant appeal because the government's conduct in contesting Keresztury's right to a reduction for acceptance of responsibility —— particularly the government's insistence that Keresztury's conduct between his plea and his sentencing voided the plea agreement —— signaled that the plea agreement, which included Keresztury's waiver of his right to appeal his sentence, was void. Further, Keresztury is correct that the district court erred when it used the weight of the entire LSD/vodka mixture in determining his base offense level. Nevertheless, the application of U.S.S.G. § 5C1.2 prevents the use for Keresztury of an offense level lower than 17. We therefore vacate Keresztury's sentence and remand the case for resentencing consistent with this opinion.

VACATED and REMANDED.