IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 02-20175

———————————————

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

        versus

ANTHONY RAY CARTER,

                                        Defendant-Appellant,

———————————————
Appeal from the United States District Court
for the Southern District of Texas
(01-CR-396)
———————————————
January 7, 2003

Before GARWOOD, JONES, and STEWART, Circuit Judges.[*]

GARWOOD, Circuit Judge:

    Defendant-appellant Anthony Ray Carter (Carter) appeals his

sentence.  We vacate and remand for resentencing.

**Facts and Proceedings Below**

    Carter appeals his sentence following his guilty plea to

———————————————

    [*]Pursuant to 5TH CIR. R.47.5 the Court has determined that this
opinion should not be published and is not precedent except under the
limited circumstances set forth in 5TH CIR. R. 47.5.4.

engaging in a consensual sexual act with a female inmate under his custody, supervision, and disciplinary authority as a Federal Bureau of Prisons correctional officer at the Federal Detention Center in Houston, Texas, in violation of 18 U.S.C. § 2243(b).

In a July 13, 2001 plea agreement, Carter waived his right to trial, judgment and sentencing before a United States District Judge, and consented to trial before a United States Magistrate Judge. The offense to which Carter pled guilty was a class A misdemeanor, which carried a range of imprisonment not to exceed one year. In the plea agreement, "the United States agrees . . . to remain mute at sentencing regarding any sentence which the United States may deem appropriate."

The Probation Officer calculated the Sentencing Guideline range at a base offensive level 9 under USSG §2A3.3, plus a two level increase for submitting a materially false written statement in the form of a sworn affidavit under USSG §3C1.1, less a two level reduction for acceptance of responsibility under USSG §3E1.1(a). Carter had no previous arrests or convictions and his criminal history category was scored at level I, which placed him in a sentencing range of four to ten months and, as the Presentence Report (PSR) reflected, he was eligible for probation. The PSR noted that there was no basis for departure from the guidelines. Neither the government nor Carter filed any objection to the PSR. Carter, however, filed a sentencing memorandum requesting

probation, supported by a letter from his wife.[1]  At the sentencing hearing, Carter urged the Magistrate Judge to grant him probation. The Magistrate judge adopted the PSR.  The Magistrate Judge declined to grant probation and sentenced Carter to six months' imprisonment, with the condition that he participate in a mental health program during imprisonment, one year supervised release, a $1,000 fine, and a $25 special assessment.

The Probation Office had received a letter from the Warden at the Houston prison facility where Carter was employed and where the conduct at issue occurred.  The letter is on official letterhead carrying at its top the printed legend "U.S. Department of Justice" and just beneath that "Federal Bureau of Prisons."  Following a discussion of the negative consequences of staff-inmate sexual relationships, the Warden's letter stated, "When a conviction is secured, a sentence of imprisonment is critical if the prosecution is to deter future crimes" and "It is my hope that the sentence imposed will include a period of imprisonment."  A copy of this letter was sent by the Warden to the U.S. Attorney several months prior to sentencing but was not sent (nor shown as sent) to Carter or his counsel.  The probation officer furnished the letter to the Magistrate Judge, but not to Carter or his counsel.  The PSR quoted portions of the letter, but not the portions recommending

---

[1]The PSR had noted that the wife had filed for divorce and was not supportive of the defendant; in the subsequent letter attached to the defense motion, the wife requested a probated sentence and wrote very supportively of the defendant.

incarceration.  The PSR introduced its quote from the letter by stating, "The warden's words, without revealing the type of sentence he advocates in this case, are as follows."  Carter and his counsel were unaware that the Warden had made any sentencing recommendation.

At the sentencing hearing, the Magistrate Judge, following defense counsel's request for probation, stated:

> "But the Court must consider *whether or not it's appropriate to place you on probation or to order* a period of *incarceration* back to *the Bureau of Prisons* who *has indicated* in – *to probation in a document that you should be incarcerated*."  (emphasis added)[2]

Carter's attorney then objected, stating that he had not seen the document to which the Magistrate referred, that the PSR did not indicate that the Warden's letter had taken any position regarding sentencing, and that any such statement would constitute a breach of the plea agreement.

Defense counsel then asked to be shown a copy of the letter; the letter was furnished to him and a brief recess was taken. Following the recess defense counsel reiterated his objection that submission to the Magistrate Judge of the portions of the Warden's letter recommending a sentence of imprisonment constituted a breach of the plea agreement's provision that the United States would remain mute at sentencing regarding any sentence which the United

---

[2]The prosecutor had earlier called the court's attention to the fact that the Warden was in the courtroom.

States may deem appropriate. Defense counsel also called attention to the fact that the statement in the letter that "[w]hen a conviction is secured, sentence of imprisonment is critical if the prosecution is to deter future crimes" was highlighted.[3] Defense counsel then stated "I would ask the Court to reconsider its decision of imprisonment . . . you can impose up to five years probation . . . I would withdraw the objection if that is done."

The prosecutor responded by stating:

"Your Honor, the United States did not direct that letter. The United States stands by its plea agreement. And I am here on behalf of the United States to represent to the Court that we are not recommending any appropriate sentence because we agreed to remain mute."

The Magistrate Judge declined to grant probation, and imposed a six month term of imprisonment, followed by a one year term of supervised release, and a $1,000 fine, observing that the probation officer had recommended ten months' imprisonment. The Magistrate Judge also remarked:

"I'm not giving a whole lot of credence to what the Bureau of Prisons says. Because you're right, the United States agreed to stand mute in this case. Except from that, this letter aside can be considered as null and void as far as I'm concerned. I'm looking at the recommendations that have been made to me by the probation department."

_____

[3]The Magistrate Judge later–in a bond hearing a few weeks after sentencing–observed that he personally had highlighted these remarks, stating "Those highlights are mine. . . . *I highlight things I want to focus on* because of vision obscurity." (emphasis added).

The Magistrate Judge granted Carter bond pending appeal, noting that the breach of plea agreement issue was "an issue where reasonable jurists could differ."

5

Likewise at the post-sentence bond hearing, the Magistrate Judge observed respecting the Warden's letter "whatever he says, has no impact on my thinking."

Carter appealed to the district court, asserting that the Warden's letter recommending a prison term breached the plea agreement's provision that the United States would take no position regarding the appropriate sentence. The District Court determined the letter violated the plea agreement because, although the U.S. Attorney's Office and Bureau of Prisons are separate entities, they both represent the singular government of the United States. However, the District Court concluded that the breach was harmless error under FED. R. CRIM. P. 52 because the Magistrate Judge stated that he had disregarded the letter and based the sentence on his own analysis of the facts. Pursuant to these findings, on February 12, 2002, the District Court entered an order affirming Carter's sentence. On February 13, 2002, Carter filed a timely notice of appeal to this court.[4]

## Discussion

The Government does not expressly challenge the district court's determination that challenged portions of the Warden's letter breached the plea agreement. The only issue mentioned by the United States in its brief is "[w]hether the District Court

---

[4]We have jurisdiction of the appeal under 28 U.S.C. § 1291. *United States v. Garrett*, 984 F.2d 1402, 1405 (5th Cir. 1993).

6

correctly found that the United States' breach of a plea agreement was harmless error," its brief states that "the United states did not appeal the District Court's finding that a breach occurred," and its brief concludes by stating that "the opinion issued by District Court on appeal from the judgment of conviction and sentence entered by the Magistrate Judge should be affirmed in their entirety."[5]  Accordingly, we proceed on the assumption that the government did breach the plea agreement.  That is not a wholly unreasonable assumption, as the Bureau of Prisons is a part of the Department of Justice[6] and to determine "whether the plea agreement has been breached, we inquire whether the government's conduct 'is consistent with the defendant's reasonable understanding of the agreement.'" *United States v. Reeves*, 255 F.3d 208, 210 (5th Cir. 2001).  Accord: *United States v. Saling*, 205 F.3d 764, 766 (5th Cir. 2000); *United States v. Carter*, 185 F.3d 298, 304 (5th Cir.

---

[5]We also note that the plea agreement contained a waiver of appeal (none of the exceptions to which are applicable).  The government has not invoked the agreement's waiver of appeal in this court, which is consistent with its failure to challenge the district court's determination that it breached the plea agreement.  The government's breach of a plea agreement precludes its invocation  of a provision therein by which the defendant waives appeal rights, regardless of whether the government's breach resulted in prejudice to the defendant. *See United States v. Keresztury*, 293 F.3d 750, 755-57 (5th Cir. 2002).

[6]We note, however, that the plea agreement states that it "binds only the United States Attorney's Office for the Southern District of Texas and the defendant.  It does not bind any other United States Attorney."  Neither the government's brief nor Carter's cites this provision of the plea agreement.

1999); *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993).

Turning to the issue of harmless error, we note that when the government breaches a plea agreement the defendant has the option to either withdraw his plea, in which case the government is no longer bound by the agreement, or to enforce specific performance by having resentencing before another judge. *Saling*, 205 F.3d at 767-68 (5th Cir. 2000); *United States v. Palomo*, 998 F.2d 253, 256 (5th Cir. 1993). *See also Santabello v. New York*, 92 S.Ct. 495, 499 (1971); *Valencia* at 761. Here the defendant has consistently sought specific performance and the government has never urged that withdrawal of the plea is the only appropriate relief to which the defendant would be entitled.

The district court concluded resentencing was inappropriate and the breach of the plea agreement was harmless because the Magistrate Judge "stated that he was basing the sentence on his own analysis of the facts, and gave his analysis for the record" and "was more lenient than the probation office recommended and had individual reasons-though coincident with the Warden's-to impose a prison sentence." However, it is undisputed that the Magistrate Judge was aware at sentencing of, and considered in connection with deciding whether to impose imprisonment or probation, the Warden's recommendation that imprisonment be imposed, and that the Magistrate Judge had highlighted the sentence in the Warden's

8

letter requesting a sentence of imprisonment because it was something the Magistrate Judge "want[ed] to focus on." Moreover, although the Probation Officer recommended a term of imprisonment, he did so after reading the Warden's letter, and in any event the Magistrate Judge ultimately decided to be *more* lenient than the probation officer. Finally, the PSR and the Magistrate Judge correctly recognized that probation was an available option under the guidelines and did not require a departure.

In these circumstances, while we cast no doubt on the veracity and good faith of the Magistrate Judge's statements that he was ultimately wholly uninfluenced by the Warden's recommendation, application of the harmless error rule would be contrary to *Santabello v. New York*, 92 S.Ct. 495 (1971), and our decisions following it such as *Valencia* and *Saling*. For example, in *Santobello* the prosecutor, in return for the defendant's plea, had "agreed to make no recommendation as to sentence," but at sentencing a new prosecutor recommended a one year sentence, defense counsel objected that this was contrary to the plea agreement but the court proceeded with sentencing stating "I am not at all influenced by what the District Attorney says" and proceeded to base his sentence on the facts stated in the probation officer's report. *Id.*, 92 S.Ct. at 497. The Supreme Court held that the breach of the plea agreement entitled the defendant to either withdraw his plea or "be resentenced by a different judge"

9

*notwithstanding* its recognition that the sentencing judge had "stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that" and its statement "that this is in no sense to question the fairness of the sentencing judge." *Id.*, 92 S.Ct. at 499. We are not at liberty to depart from *Santabello*.[7]

This is not a case where it can be *objectively* determined that the breach *could not* have been harmful, as where the defendant received the minimum lawful sentence, or where the guidelines agreed to are not used but those employed are substantively identical, *United States v. Carmouche*, 138 F.3d 1014, 1017 (5th Cir. 1998), or where the information the prosecutor agreed to but failed to furnish is furnished by the defense and confirmed by the prosecutor at sentencing. *United States v. Hooten*, 942 F.2d 878, 884 (5th Cir. 1991).

We accordingly vacate Carter's sentence and, as Carter has requested, remand the cause for resentencing before another judge (or magistrate judge), and further direct that a new PSR (omitting any reference to the Warden's letter) and new sentence recommendation be prepared by a different probation officer and that no consideration be given at any stage to the Warden's letter or previous probation department sentence recommendation.

_____

[7]That the resentencing must be before a different judge is likewise clear from, for example, *Valencia* and *Saling*.

10

SENTENCE VACATED and CAUSE REMANDED with

directions for resentencing.